[No. 4767.]

THE CRIPPLE CREEK MINING COMPANY V. BRABANT.

1. **Pleading—Complaint—Separate Counts—Double Statements.**

While the practice of pleading a double statement of the case, so as to meet the exigencies of the proofs, is not, as a general rule, permitted under the code, the rule is not absolutely inflexible; and it sometimes becomes necessary, and therefore permissible, to duplicate statements for the same cause of action where there is reasonable cause to believe that plaintiff cannot safely go to trial upon a single statement, as where 'he cannot reasonably be expected to anticipate the evidence in advance of the trial.—P. 425.

2. **Pleading—Complaint—Amendment.**

Where, in an action by the widow of deceased to recover damages for personal injuries resulting in her husband's death through defendant's negligence, plaintiff was allowed, at the close of her case in chief, over the objection of defendant, to amend her complaint by inserting allegations as to the amount of wages the deceased was receiving at the time of his death and of the assurances given him by defendant that the place was safe where he later received his fatal injuries. Held, that, while possibly the usual formalities were not complied with by plaintiff in making the request, yet, under the circumstances disclosed by the record, the court did not abuse its discretion in permitting the amendment to be made, but rather promoted a leading object of the code, that is, assisted the parties in obtaining justice.—P. 425.

3. **Master and Servant—Death of Servant—Examination of Jurors—Proper Questions.**

In an action against a mining company to recover damages for personal injuries resulting in death through defendant's negligence, it was not prejudicial error for plaintiff's counsel to ask the-jurors if they were interested in a certain guarantee insurance company, as it was proper for the purpose of obtaining information as a guide for the exercise of a peremptory challenge or one for cause.—P. 426.

4. **Mines and Mining—Master and Servant—Foreman not Fellow-servant.**

A foreman who has entire charge and is overseer of the work of timbering a mine, and is in full control of the timber-men, is not a fellow-servant with the men working under him, but is a representative of the employer.—P. 429.

5. **Mines and Mining—Master and Servant—Death of Servant—Doctrine of Safe Place—Instructions.**

Where, in an action against a mining company to recover damages for personal injuries resulting in death through defend-ant's negligence, the evidence was conflicting as to whether the work, in which he was engaged at the time of receiving the in-juries, was that of making safe a dangerous place, and plaintiff's evidence tended to show that decedent first worked in the place on the day of the injury, and that the danger was not obvious, although there were some indications that it was not entirely safe, which fact had been communicated by deceased to defend-ant's overseer, and that the latter, after a personal examination which he then made and from previous knowledge and inspec-tions of the stope, and with fuller and more complete knowledge of the character of the ground in which it was being run, assured deceased that the place was perfectly safe, and that there was no danger of the falling of rock or earth from the walls of the stope, from which the particular rock fell which crushed him; it was proper to instruct the jury that the doctrine of safe place was applicable to the case, as made by plaintiff's witnesses.—P. 430.

*Appeal to the District Court of Teller County.*
*Hon. Louis W. Cunningham, Judge.*

Action by Minnie V. Brabant against The Cripple Creek Mining Company. From a judgment in favor of plaintiff, defendant appeals. *Affirmed.*

Messrs. WOLCOTT, VAILE & WATERMAN and Mr. H. H. DUNHAM (Mr. WM. W. FIELD, of counsel), for appellant.

Messrs. STIMSON & SMITH and Mr. JAMES J. MC-FEELY, for appellee.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

Action by Minnie V. Brabant, widow of Fred Brabant, deceased, to recover damages for personal injuries resulting in her husband's death through defendant's negligence. From the judgment in plaintiff's favor defendant appeals.

1. It is urged that the complaint is subject to the vice of duplicity in that it contains two separate counts relating to the same state of facts, and that the court erred in not compelling plaintiff, at defendant's request, to elect on which she would go to trial. As stated in *Spaulding v. Saltiel,* 18 Colo. 86, 88, the practice of pleading a double statement of the case so as to meet the exigencies of the proofs is not, as a general rule, permitted under the code. The rule, however, is not absolutely inflexible. In *Cramer. v. Oppenstein,* 16 Colo. 504, it was said that it sometimes becomes necessary, and therefore permissible, to duplicate statements for the same cause of action where there is reasonable cause to believe that plaintiff cannot safely go to trial upon a single statement, as where he cannot reasonably be expected to anticipate the evidence in advance of the trial. We think the case in hand comes under this exception to the general rule.—*Leonard v. Roberts,* 20 Colo. 88; *Manders v. Craft,* 3 Colo. App. 236; *Rucker v. Smelting & Refining Co.,* 18 Colo. App. 487; *Vindicator Cons. G. M. Co. v. Firstbrook,* 36 Colo. 498.

2. At the close of her case in chief, plaintiff was allowed, over the objection of defendant, to amend her complaint by inserting allegations as to the amount of wages her deceased husband was receiving at the time of his death, and that defendant assured him that the place where he received his fatal injuries was safe. Possibly the usual formalities were not complied with by plaintiff in making the request, but we do not think, in the circumstances disclosed by the record, that the court abused its

discretion in permitting the amendment to be made. Indeed, the court by its ruling promoted a leading object of the code, viz, to assist the parties in obtaining justice.

3. The objections to rulings of the trial court in admitting and excluding testimony and in curtailing, as alleged, the right of defendant to cross-examine plaintiff's witnesses, we do not find to be well taken. Possibly technical errors may have been committed in some particulars, but they were not of serious consequence, and clearly not prejudicial, and some of them were cured by subsequent rulings. For these reasons, we do not notice them in detail, and for the additional reason that they fall within the range of the legal discretion of the trial judge, which was not abused.

4. In the examination of some of the jurors on *voir dire*, plaintiff's counsel asked them if they were interested in a certain guaranty insurance company. The defendant vigorously asserts that this constituted prejudicial error, inasmuch as the attention of the jurors was unnecessarily directed to the supposed fact that an insurance company, and not the defendant, was the real party in interest, since it is matter of common notoriety that mining companies usually insure against such accidents. We do not find from the record that there was any intention by plaintiff's counsel to make prominent this connection of the insurance company with the case, but are of opinion that he might thus obtain the information as a guide for the exercise of a challenge for cause or peremptorily. This point was so ruled by this court in the *Firstbrook case, supra,* and the case in hand comes within that decision.

5. The appellant's assignments of error that the evidence fails to show negligence of defendant, and that the proofs are conclusive that plaintiff's

husband assumed the risk of the danger incurred
and was guilty of contributory negligence, and that
the doctrine of safe place does not apply, are best
considered in connection with the objections which it
makes to the charge to the jury. To an understand-
ing of these objections, the issues should be stated
and a summary of the evidence given.

The two principal specifications of negligence
averred in the complaint are that defendant violated
its duty to plaintiff's husband in that it failed to
provide a reasonably safe place for him to work, and
that, without fault upon his part, he obeyed the com-
mands of defendant's representative to work in a
dangerous place, which was known to be so by de-
fendant, and unknown to, and could not have been
ascertained by, him in the exercise of reasonable
care. The defenses pleaded were a denial by the
defendant of negligence on its part, and the affirma-
tive pleas of assumption of risk and contributory
negligence. The court submitted the case to the jury
upon the theory that the doctrine of safe place was
applicable to some of the facts of the case—that is,
if they believed the evidence of plaintiff's witnesses
on that point—and that if, in this respect, the de-
fendant violated its duty, plaintiff was entitled to
recover, unless the jury found that the risk was as-
sumed by plaintiff's husband, or that his own negli-
gence contributed to the injury. On the other hand,
the jury were properly instructed that this "safe
place" rule did not apply to such a case as that
made by defendant's evidence.

The appellant maintains that the doctrine of
safe place is not applicable to the case as made be-
cause the place of work was temporary and transient
in character, and plaintiff's husband was employed
to do, and was engaged in, the very work of making
safe for others to work in, a temporary place obvious-

ly dangerous, and known to be so by him. Appellant says that such was the nature of deceased's service, that he was employed as a timberman in defendant's mine, and at the time of the injury was engaged in the work of placing in a stope stulls for the very purpose of making its walls safe and preventing the rock and earth thereof from falling. The learned counsel for appellant unqualifiedly assert that the evidence is uncontradicted to this effect, and that, such being the case, the jury should have been instructed, as matter of law, that the doctrine of safe place did not apply, and that the defendant had voluntarily assumed the risk of his employment, and as the evidence showed that he was as well informed of the dangerous character of the place in which he was working as the appellant itself, a nonsuit should have been granted.

The difficulty with this contention is that the evidence is seriously in conflict as to all these particulars. It is true, as appellant says, that the deceased was employed as a timberman, and some of the evidence tended to show that the work which he was prosecuting at the time of the accident was, at least in some measure, for the purpose of making safe a dangerous place. Upon the other hand, there was evidence just as positive that placing stulls in the stope was for the purpose of a foundation upon which to place lagging for a floor or support upon which workmen might stand in pushing on the stope —which was intended to be as permanent as the stope itself—and as a receptacle for rock and earth which was broken down in the prosecution of the work of stoping out ore. In other words, there was evidence to sustain both the theory and claim of the plaintiff and that of the defendant; evidence tending to establish a case analogous to the class of cases well represented by *City of Greeley v. Foster,* 32 Colo. 292;

*Finalyson v. Utica M. & M. Co.,* 67 Fed. 507; *C. C. & I. Co. v. Lamb,* 6 Colo. App. 255; *Sampson M. & M. Co. v. Schaad,* 15 Colo. 197, in which the "safe place" doctrine is held not to apply; and also that class of cases represented by *Faulkner v. Mammoth M. Co.,* 23 Utah 437, in which it is pertinent.

An examination of the instructions shows that the court fully and properly instructed the jury upon both of these theories, and certainly those given upon the supposition that defendant's evidence is true were as favorable as could be asked. Indeed, defendant's objections to the charge given are not that the separate instructions are wrong, if the facts to which they are legally applicable were present, but that they are not germane to the evidence actually produced in the case, and therefore constitute prejudicial error. But, as we have seen, the evidence was in hopeless conflict, and the instructions of the court bore upon the theories of both parties to the case in support of which there was some evidence. It is unquestionable that the evidence is in irreconcilable conflict, and we might, for our present purpose, even go further and suggest that the jury might have found abundant reason for a verdict in accordance with the evidence of defendant. The difficulty with its case, however, is that the jury, under proper instructions, rejected its evidence and saw fit to believe the testimony of plaintiff's witnesses.

The contention that whatever may have been the orders of defendant's foreman to deceased to work in this place, and irrespective of his assurance that it was safe, is immaterial because the foreman was only a fellow-servant, we do not think is well taken. The foreman's testimony was that he had entire charge, and was overseer, of the work of timbering in the mine, and was in full control of the timbermen. We are of opinion that this was a dis-

tinct department of work, and therein such overseer was the representative of the defendant itself.

The testimony is so conflicting as to the condition of the stope where the injury occurred, as to its being safe or dangerous, and as to deceased's knowledge of it, that no useful purpose would be subserved by considering it in detail. We merely remark that while there was positive testimony that the place was obviously known to be dangerous, and that deceased, an experienced miner, was as much aware of it as was defendant itself, and voluntarily entered upon the work and assumed the risk after being warned of the danger, on the other hand, there is testimony that the deceased first saw and worked in this place on the day of the injury, that the danger was not obvious, although there were some indications that it was not entirely safe, which had been communicated by deceased to defendant's overseer, and the latter, after a personal examination which he then made and from previous knowledge and inspection of the stope, and with fuller and more complete knowledge of the character of the ground in which it was being run, assured deceased that the place was perfectly safe, in relying upon which the latter was justified, and that there was no danger of the falling of rock or earth from the walls of the stope, from which later the particular rock fell which crushed him.

In this state of the evidence, we do not see how the court could have done otherwise than charge, as it did, that the doctrine of safe place was applicable to the case as made by plaintiff's witnesses.

Perceiving no prejudicial error in the record, the judgment is affirmed.        *Affirmed.*

CHIEF JUSTICE GABBERT and Mr. JUSTICE STEELE concur.