No. 11,564.

Axelson, et al. *v.* Columbine Laundry Co.

Decided April 4, 1925.

Action in injunction. Decree for plaintiff.

*Modified and Affirmed.*

1. Injunction—*County Judge.* The county judge may grant a writ of injunction in a suit pending in the district court of his county in the absence of the district judge from the county.

2.    *Affidavit.* A writ of injunction may not properly be issued without notice unless an affidavit in compliance with the provisions of Code section 165 be first filed.

3.    *Emergency Bond—Purpose.* The purpose of an emergency bond in an injunction case is to discourage the abuse of the drastic process of ex parte injunction by penalizing the offender.

4.    *Emergency Bond—Sufficiency.* Conditions of an emergency bond in an injunction case reviewed, and held insufficient to support a summary judgment under Code section 165.

5.    *Emergency Bond—Sufficiency.* An emergency bond in an injunction case should meet the requirements of the law to be effective.

6.    *Dismissal.* In an injunction case, if at any time the court finds that the emergency did not exist or was brought about by plaintiff or with his knowledge, the complaint should be dismissed; but the findings being to the contrary there was no error in the refusal of the court to dismiss the complaint and enter judgment on the emergency bond.

7.    APPEAL AND ERROR—*Findings—Conflicting Evidence.* Findings of the trial court based on conflicting evidence, if supported by sufficient evidence, will not be disturbed on review.

8.    PLEADING—*Amendments.* Trial courts are given great latitude in the allowance of amendments, and unless it is apparent that a party has been prejudiced by rulings on such questions, they will not be disturbed on review. In the instant case, under the facts disclosed, it is held there was no abuse of discretion in permitting the filing of an amended complaint after the evidence was closed in hearing of application for temporary injunction.

9.    CONTRACTS—*Trade—Injunction.* Contract of a laundry company employee providing that in the event of the termination of his employment with the company he would not for himself or others solicit business from the company's customers or interfere with its business for a period of six months, held reasonable, not violative of any rule of public policy, and enforceable by injunction.

10.    INJUNCTION—*Temporary Restraining Order.* Upon the granting of a temporary injunction upon notice, the temporary restraining order becomes functus officio.

11.    APPEAL AND ERROR—*Judgment.* The trial court having erred in not dissolving a temporary restraining order, the error is corrected by order of the Supreme Court on review, without remanding the case for further proceedings.

*Error to the District Court of the City and County of Denver, Hon. Henley A. Calvert, Judge.*

Mr. James H. Teller, Mr. Barney L. Whatley, Mr. Jack Garrett Scott, for plaintiffs in error.

Mr. John T. Bottom, Mr. Paul F. Irey, for defendant in error.

*Department Two.*

Mr. Justice Butler delivered the opinion of the court.

The defendant in error obtained a decree, enjoining the plaintiffs in error from soliciting laundry work from the customers of the former. We are asked to reverse that judgment. The Columbine Company will be referred to as the plaintiff, and Axelson and the Superior Company as the defendants.

1. The case presents some unusual features. It was filed in the district court on September 1, 1925. On the same day an application for a temporary restraining order was granted by the judge of the county court, although at the time at least two judges of the district court were in the county and available. The order restrained the defendants not only from soliciting laundry work from the plaintiff's customers, but also from "soliciting or collecting laundry work from any and all persons, firms or corporations," which, of course, included those of the Superior Company's own customers who had never patronized the plaintiff. The restraining order was served on Axelson on September 2, and on the Superior Company on September 4. The county judge may grant a writ of injunction in a suit pending in the district court of his county only in the absence of the district judge from the county, or under other circumstances not present in this case. Code, section 159. That the order of the county judge was void, is clear; indeed, the plaintiff's counsel admit that it was.

2. After the service of the restraining order negotiations looking to a settlement of the controversy were carried on by representatives of the two laundry companies. According to witnesses on behalf of the plaintiff, the representative of the Superior Company promised not to permit its driver to interfere with the plaintiff's trade, but thereafter such interference was resumed. Realizing that the order of the county judge was void, the plaintiff, on September 17, without any notice to either defendant, applied to the district court for an order vacating the former order, and releasing the two bonds already given, and also applied for a second temporary restraining order. These applications were granted. The order releasing the bonds was later (September 28) vacated on application of the defendants, but the bonds have not been found. At the time the plaintiff applied to the district court (September 17) for a second temporary restraining order, no new affidavits were filed. The plaintiff relied upon the three affidavits that had been presented to the judge of the county court on September 1. In section 165 of the Code it is provided: "Whenever application shall be made for a writ of injunction, the party intending to make such application, except as hereinafter provided, shall give notice to the opposite party of the time and place of making such application, prior to making the same; Provided, That if complainant shall file an affidavit by himself or his representative, and by not less than two other persons, showing that irreparable mischief or injury will result to him, if notice be given, and the complainant shall, further, make affidavit that such alleged emergency is not the result of his creation or connivance, and that his application is made at the earliest time that he could have made it, after learning the facts, the court or judge shall have power to grant a temporary restraining order."

Giving the three affidavits a liberal construction, they may be said to show that irreparable mischief or injury

will result to the plaintiff, if notice of the application be given. The plaintiff, however, wholly failed to "make affidavit that such alleged emergency is not the result of his creation or connivance, and that his application is made at the earliest time that he could have made it, after learning the facts." The Code not only requires such affidavits to be filed, but also provides that only in the event that they are filed shall the court have "power" to grant a temporary restraining order without notice. The court, therefore, had no power to grant the temporary restraining order of September 17. We find an analogy in the law concerning attachment. In section 98 of the Code it is provided: "No writ of attachment shall issue unless the plaintiff, his agent or attorney, or some credible person for him, shall file in the office of the clerk of the court in which the action is brought, an affidavit setting forth that the defendant is indebted to such plaintiff, stating the nature and amount of such indebtedness as near as may be, and alleging any one or more of the following causes for attachment, viz:" Here follow the several causes.

In *Mentzer v. Ellison*, 7 Colo. App. 315, 43 Pac. 464, the plaintiff sued out an attachment. His affidavit stated that the defendant is indebted to the plaintiff in a given sum, but omitted to state any cause for attachment. The Court of Appeals held the attachment void, saying:

"An affidavit is an essential prerequisite to the issuance of a writ of attachment. The statute is prohibitory in its terms. It provides that no writ shall issue except upon affidavit filed. The jurisdiction of the court in attachment proceedings depends upon the affidavit, and if none is filed the attachment writ and all proceedings under it are void. * * *

"But the affidavit may, in essential particulars, fall so far short of the statutory requirements that it cannot be regarded as an affidavit for attachment. Two statements of fact are required in the affidavit, and each is indis-

pensable: It must allege an indebtedness from the defendant to the plaintiff; it must also aver the existence of one of the grounds upon which the statute authorizes an attachment. * * * The affidavit must combine the allegation of indebtedness with the allegation of cause. If either is entirely absent, there is no more power to issue the writ than if there were no affidavit at all."

The court also held that the defect was not a mere irregularity, but jurisdictional, so that it cannot be cured by the filing of another affidavit under section 117 (now § 128) of the Code.

That section provides: "No writ of attachment shall be quashed * * * on account of any informality or insufficiency of the original affidavit, * * * if the plaintiff * * * shall file a sufficient affidavit."

Referring to that section, the court said: "A want of completeness of statement, or a failure to aver directly that which may nevertheless be gathered from the entire affidavit, may be cured by amendment. Such defects pertain to form rather than substance, and render the proceeding voidable, but not void. But the entire want of an essential jurisdictional fact cannot be supplied; and liberal as the statute is, it was not intended to permit a party under cover of an amendment to interpose an affidavit where originally there was either none at all, or one so lacking in the statutory requirements as to be equivalent to none at all."

The Mentzer case has been cited with approval in *Stephens v. Wheeler et al.,* 60 Colo. 351, 153 Pac. 444, where we held that an affidavit for an attachment, not subscribed, and an attachment bond without sureties, are nullities and incapable of amendment. In the present case there was not even an attempt to correct the omission. The motion of Axelson to dissolve the temporary restraining order specifically called attention to the absence of the required affidavit; and while the motion of the Superior Company was not so specific, it did say that the affidavits did not state any fact or thing entitling the

plaintiff to a temporary restraining order. The court should have dissolved the temporary restraining order.

3. Defendants' counsel contend that not only should the court have dissolved the temporary restraining order, but that the court also should summarily have entered judgment for $5,000 on the emergency bond. The plaintiff filed two bonds, each in the sum of $5,000. One of these bonds is the ordinary temporary injunction bond. The other, no doubt, was intended to be an emergency bond such as the Code requires when a temporary restraining order is made on an ex parte application. Section 165 of the Code provides: "*    *    * no such temporary restraining order or writ of injunction shall issue without notice until the complainant shall have executed a bond, in addition to the bond or undertaking provided for in section 147 of this Code, with not less than two sureties, and in an amount to be fixed and approved by the court or a judge thereof, and conditioned for the payment of the sum therein mentioned to the defendant if it shall be adjudged that such emergency did not exist or that the plaintiff created, or connived at its creation, by neglect or otherwise."

The issuing of an injunction without notice may result in great hardship to the person enjoined. The Code, therefore, has forbidden the courts to grant injunctions on ex parte application, except when the applicant has complied with certain preliminaries. It requires the filing of the affidavits, to which we have already called attention. The applicant must also file the customary temporary injunction bond, conditioned to pay all such costs and damages as shall be awarded against the complainant in case the temporary restraining order or injunction shall be modified or dissolved in whole or in part. This bond protects the defendant against any damages sustained by reason of the wrongful suing out of the temporary restraining order. But there is an additional bond that must be given—the emergency bond.

The purpose of requiring this bond is to discourage the abuse of this drastic process of the court by penalizing the offender.  Section 165 of the Code contains this provision: *"And provided further,* That in the event the temporary restraining order shall issue without notice and it shall afterwards appear to the court, upon any hearing or trial of said matter, that the emergency alleged therefor did not exist, or, existing, was brought about by the act or omission of or for the plaintiff, or by his knowledge, the court shall find and enter judgment accordingly, and shall, also, dismiss the complaint without respect to the merits thereof, and shall, also, summarily enter judgment on said emergency bond for the defendant and against the plaintiff and his sureties * * * *.''

For the purpose of such judgment, it is immaterial whether or not the defendant has sustained any damage; if he has suffered damage, the other bond protects him. The so-called emergency bond filed in this case is set forth at folios 35 to 40 of the abstract.  By it the signers—'' * * * agree and undertake to pay the sum of Five thousand and No/100 ($5,000.00) Dollars, and promise to the effect, that, in case said temporary restraining order or temporary injunction shall issue, the said plaintiff will pay to the defendants all costs and damages as shall be awarded against the complainant in case the said temporary restraining order or temporary injunction shall be modified or dissolved in whole or in part.''

It is obvious that this bond lacks entirely the conditions required by the Code, and is insufficient to support a summary judgment.  The condition is not the same as the condition in the bond involved in *First State Bank of Sulphur Springs v. Becker,* 78 Colo. 436, 242 Pac. 678, but is substantially the same as the condition in the bond before the court in *Reagan v. Dick,* 78 Colo. 148, 240 Pac. 337.  The court was right in refusing to summarily enter judgment on this bond, not only for the reason just

given, but for an additional reason that will appear in connection with our discussion of the next point suggested by the defendants' counsel. The records of this court show that so-called emergency bonds, with conditions somewhat similar to the conditions in this bond, are in use in other districts. We suggest that if lawyers would take the pains to present emergency bonds that meet the requirements of the law, and if judges would refuse to approve bonds that do not, persons against whom temporary restraining orders are issued would receive the protection to which they are entitled.

4. It is assigned as error, that the trial court refused to dismiss the complaint without respect to the merits. If it appears to the court, upon any hearing, or even as late as during the trial, that the emergency did not exist, or, if it existed, that it was brought about by the act or omission "of or for" the plaintiff, or by his knowledge, it is the duty of the court, no matter how meritorious the evidence may show the plaintiff's case to be, to dismiss the complaint. This is an additional penalty visited upon one who recklessly sues out a temporary restraining order. But as a condition to such dismissal, and as a condition to a summary entry of judgment on the emergency bond, it must be made to appear to the court either that the alleged emergency did not exist, or, if it did exist, that it was brought about by the act or omission of or for the plaintiff, or by his knowledge. At no time did the court find that any of those conditions existed. The court's findings were to the contrary. The evidence was conflicting, but there was sufficient evidence in support of those findings to preclude this court from interfering therewith. The refusal of the trial court to dismiss the complaint without respect to the merits, and to summarily enter judgment on the so-called emergency bond, was not error.

5. On September 21 the court heard together the motions to dissolve the temporary restraining order, and to dismiss the case and summarily enter judgment on the

so-called emergency bond, and also the application for a temporary injunction. Evidence was introduced, and the court denied the motions to dissolve, etc., and granted the application for a temporary injunction. At the close of the evidence, the court, over defendants' objection, entered an order permitting the plaintiff to file an amended complaint. Later the amended complaint was filed. The defendant company thereupon filed a motion to strike the amended complaint from the files, which motion was denied. These rulings are assigned as errors. It is objected that no notice of the application for leave to file the amended complaint was given to the defendants,. that they had no opportunity to be heard thereon, and that the plaintiff madé no showing that justified the order permitting the filing of the amended complaint. The order was made at the close of the evidence. On the showing made at the hearing, it was evident that an amendment of the complaint was desirable, in order that the real controversy may be presented to the court and determined. The original complaint bears evidence of haste in its preparation. Counsel for the defendants had an opportunity to be heard in opposition to the amendment; indeed, they were present and made their objection; and further, they filed the defendant company's motion to strike the amended complaint from the files, and were given a hearing on that motion. The amended complaint did not change the cause of action. Assuming that there was an irregularity, even an error, in the proceeding, it did not affect the substantial rights of the defendants. Section 84 of the Code provides: "The court shall in every stage of an action disregard any error or defect in the pleadings or proceedings which shall not affect the substantial rights of the parties, and no judgment shall be reversed or affected by reason of such error or defect."

In *Gwynn v. Butler,* 17 Colo. 114, 28 Pac. 466, the record showed that, by leave of the court, the plaintiff amended his complaint "so as to conform to the evidence

and facts aforesaid.'' This recital was intended to bring the procedure within the section of the Code permitting such amendments; but the fact was that the amendment was made at the *opening* of the trial. The defendant objected to the procedure, but this court held that the time and mode of amendment did not affect the substantial rights of the parties. In *Cripple Creek Mining Co. v. Brabant,* 37 Colo. 423, 87 Pac. 794, where an amendment was permitted, Mr. Justice Campbell, in the opinion, said: ''Possibly the usual formalities were not complied with by plaintiff in making the request, but we do not think, in the circumstances disclosed by the record, that the court abused its discretion in permitting the amendment to be made. Indeed, the court by its ruling promoted a leading object of the code, viz., to assist the parties in obtaining justice.''

Trial courts are given great latitude in the allowance of amendments, and unless it is apparent that a party has been prejudiced by the action of the court, the ruling will not be disturbed. *Florence Oil & R. Co. v. Oil Well Supply Co.,* 38 Colo. 124, 87 Pac. 1077. The trial court did not abuse its discretion in allowing the plaintiff to file its amended complaint.

6. The defendant Axelson was in the employ of the plaintiff as laundry driver and solicitor, under a contract which contained these provisions: ''* * * in the event of the termination of the said employment, either voluntary or involuntary, on the part of the said employee, the employee hereby covenants and agrees that he shall not, or will not, for the period of six months thereafter, enter into the business of collecting and soliciting laundry work on his own account, or in the employ or on behalf of any other person, persons, firm or corporation, in any such way as to in any wise interfere with the good will of the said employer, or attempt to influence, solicit, or take away for himself, or any other person, persons, firm, or corporation, any of the customers

of the said employer within the City and County of Denver, state of Colorado.

"* * * It is further agreed that the employee is hereby placed in a position of trust and confidence by the employer in respect of the names and addresses of the customers of the employer on the route assigned to the employee and the employee hereby covenants and agrees, that he shall not and will not, during said employment, nor for a period of six months thereafter, divulge the said names or addresses to any competitor of the employer, or to any other person or persons, firm or corporation, in the City and County of Denver, and state of Colorado, without the express consent of the employer."

On May 23, 1925, the defendant Axelson voluntarily quit the employ of the plaintiff, and a few days later entered the employ of his co-defendant, the Superior Company. Within six months after leaving the plaintiff's employ, the defendant Axelson, with the acquiescence and connivance of his co-defendant, who knew of the existence and terms of Axelson's' contract with the plaintiff, knowingly solicited and obtained for the Superior Company the patronage of many of the plaintiff's customers. The contract was reasonable in its restraint; it violated no rule of public policy. The plaintiff did not sue for damages, but sought only to restrain the defendants from their wrongful acts until the expiration of the six months provided in the contract, to wit, until November 23, 1925. The temporary injunction, by its terms, operated only during that period of time. The final hearing was on January 5, 1926, and the final order was that the temporary injunction "was proper and should be sustained," that it be "made permanent up to November 23rd 1925," and that the plaintiff have judgment against the defendants, and each of them, for costs. Upon the hearing of the application for a temporary injunction, and upon the final hearing, the evidence was

conflicting. There was sufficient evidence at both hearings to sustain the findings of the court.

7. As already stated, the court erred in not dissolving the temporary restraining order. Upon the granting of the temporary injunction, upon notice, the temporary restraining order became functus officio. *Reagan v. Dick,* 78 Colo. 148, 240 Pac. 337. But because of the conditions contained in the bonds given upon the issuance of the temporary restraining order, the defendants are entitled to a correction of the trial court's error in this respect. To correct that error, it is not necessary to remand the case to the district court. It is the judgment of this court that the temporary restraining order issued by the district court on September 17, 1925, be, and it is hereby, dissolved as of September 21, 1925, the day when such order should have been made by the district court. In other respects, the judgment is affirmed.

The defendant in error shall have judgment for one-half of his costs taxed in this court.

MR. CHIEF JUSTICE BURKE, MR. JUSTICE ADAMS and MR. JUSTICE CAMPBELL concur.