PEMCO CORP., *etc.*

*v.*

WILLIE ROSE

(No. 14358)

Decided July 16, 1979.

*Richardson, Kemper, Hancock & Davis, Robert M. Richardson* for appellant.

*David Burton* for appellee.

McGRAW, JUSTICE:

Appellee, PEMCO Corporation, (plaintiff) commenced this action seeking an injunction to specifically enforce a restrictive covenant in a written employment contract between itself and its former employee, appellant Willie Rose (defendant). On July 17, 1978, the Circuit Court of Mercer County entered a final order enjoining the defendant for a period of two (2) years beginning on May

31, 1978, from engaging either directly or indirectly in employment with the American Mine Research or any other business or enterprise the nature of which is competitive to the plaintiff's business, within the radius of one hundred fifty (150) miles of the City of Bluefield, West Virginia. On August 4, 1978, the trial court overruled the defendant's Rule 59(e) motion to dissolve the injunction and this appeal followed.

Defendant seeks to reverse the rulings of the trial court on several grounds. The two principal contentions are that the non-competition covenant is not supported by consideration and that it creates an unreasonable restraint of the trade unenforceable by equitable relief. Based upon what we believe the present State of Virginia law to be, we agree with both these contentions, reverse the trial court and dissolve the injunction. Accordingly, we do not address defendant's other contentions.[1]

A careful review of the record reveals the following material facts: The plaintiff is a West Virginia corporation engaged primarily in the design and development of electrical devices used in underground coal mining, with its principle place of business located in Bluefield, Virginia.

Willie Rose, the defendant is an electrical engineer with a specialty in electronics engineering. Prior to his employment by the plaintiff he had been employed as an engineer for the previous eight years, working in Pennsylvania, Florida, and most recently in the Washington, D. C. metropolitan area.

On August 30, 1976, he visited the plaintiff's offices in Bluefield, Virginia, and had personal employment interviews with approximately five corporate representatives. On that day he ws offered and accepted employ-

---

[1]Defendant also argued that plaintiff was not entitled to equitable relief because it had an adequate remedy at law and was guilty of unfairly negotiating the non-negotiating covenant. Defendant also claimed the restrictive competition violated the Virginia Anti-Trust Act, Va. Code §§ 59.1-9.1 through 59.1-9.5 (Cum. Supp. 1977).

ment with the corporation, and a salary was agreed upon by the parties. Thereafter, he cancelled his housing lease in the Washington, D.C. area and signed a contract to purchase a home in Bluefield, West Virginia. During this time period he contacted one of plaintiff's representatives concerning his relocation expenses and in early September was advised in writing that his relocation expenses would be borne by plaintiff.

On September 20, 1976, when defendant arrived at the plaintiff's offices in Bluefield, Virginia, for his first day at work, he was asked by an employee of the corporation to sign an "agreement" containing the restrictive covenant which is the subject of the present litigation. The defendant signed the purported agreement which reads in material parts:

### EMPLOYMENT AGREEMENT

WHEREAS, the Employee desires to be employed by the Company in its plant and laboratories at Bluefield, Virginia, upon the terms and conditions hereinafter stated; and

\* \* \* \*

3. The Employee agrees that for a period of two years and after the time of termination of his employment he shall not engage directly or indirectly, in any business or enterprise, the nature of which competitive to the Company's business, within a radius of one hundred & fifty miles of the City of Bluefield, West Virginia.

When asked about the circumstance surrounding this event, defendant testified, "I read it carefully. I had already entered into an agreement to buy the house. We'd already terminated our lease. We were renting a house in Washington. I wanted to move into the area. I signed the contract." The employment contract was also signed by the plaintiff's company president, but he signed the standard form agreement at some earlier point in time. The general practice was for plaintiff's president to sign a number of standard agreements in

advance for the employee to execute on the first day of work.

During the defendant's employment for plaintiff, he performed services on three distinct developmental projects, the most important of which in the context of this case was the development of an underground tone wire or cable monitor. The purpose of a tone wire monitor is to prevent mining accidents by guaranteeing the integrity of electrical cables used in the operation of various types of machinery in the underground coal mining industry.

On May 15, 1978, the defendant resigned his position effective May 31, 1978, and on June 1st of the same year commenced employment with American Mine Research, a company engaged principally in the manufacture and development of a small electronic communication devices for coal mines which had as its principal product a type of tone ground wire monitor.

On June 2, 1978, the next day, plaintiff filed suit in the Circuit Court of Mercer County seeking to enforce by injunction the restrictive covenant. Plaintiff alleged that during the course of defendant's employment, he worked on projects involving trade secrets which could be used by competitors in the geographic area to the detriment of plaintiff.

Based on the post-employment restraint, plaintiff requested and obtained a temporary injunction against the defendant enjoining him for accepting employment or working for American Mine Research or any other competitive business within the geographical limitations referred to in the contract for a period of two years from May 15, 1978.

The trial court found plaintiff requires all engineers to execute an employment agreement prior to actually going to work as a condition precedent to employment. It also found that the purported agreement was a valid agreement and that the restrictive covenant contained therein was reasonable and necessary for the protection

of the plaintiff and that enforcement of such provision would not unduly restrict the defendant from earning a livelihood.

We begin by noting that the "Agreement" in question was formed in Virginia to be performed in Virginia, where plaintiff's business was located. Both parties apparently agree that under West Virginia's traditional conflicts of law principles, Virginia law controls the validity of and enforceability of the restrictive covenant.[2] *See, e.g., Michigan National Bank v. Mattingly*, ____ W. Va. ____, 212 S.E.2d 754 (1975).

Both parties to this proceeding are in agreement that a restrictive covenant not to compete must be supported by valuable consideration before it is enforceable by a party to the agreement. *See, Merriman v. Cover, Drayton, & Leonard*, 104 Va. 428, 51 S.E. 817, 819 (1905). The parties, however, disagree as to whether there was a valid oral contract formed at the time the defendant employee interviewed for a position with the plaintiff company on August 30, 1976.

Plaintiff argues that the real beginning of defendant's employment was September 20, 1976, and the Court should address itself only to the written agreement signed that day. Similarly, it is argued that the "oral agreement" between plaintiff and defendant should be considered as merely an offer of employment which was not accepted by the defendant until he executed the employment agreement of September 20, 1976, and commenced performing services as a full-time employee. Finally, plaintiff argues that even if the Court should find a valid oral employment agreement was formed by the parties on August 30, 1976, the written agreement is supported by valid consideration because it was execut-

---

[2]The 150 mile geographic restraint on competition operates to bar employment in most of West Virginia and Virginia, and portions of Kentucky, Tennessee, Ohio and Maryland with any enterprise the nature of which is competitive with plaintiff. In this respect the contract is to be performed in six states.

ed near in time to the initial employment contract and is, therefore, ancillary to that employment contract.

The defendant employee argues the evidence demonstrates an employer-employee relationship was established by oral contract on August 30, 1976. He then urges upon us the rule that once the relationship of employer and employee is established without a restrictive covenant, any agreement thereafter made by the employee not to compete with the employer must be in the nature of a new contract based upon a new consideration.

Preliminarily, we find the evidence clearly supports the conclusion that a valid oral employment contract was entered into by the parties on August 20, 1976, before the defendant employee actually commenced performing services for the plaintiff employer on September 20, 1976. The trial court made no express finding on this point but the evidence clearly establishes the employment relationship began on August 30, 1976.[3]

Having concluded the evidence requires a finding that an oral contract of employment was effected by the parties prior to defendant's execution of the "Employment Agreement," we must decide if the non-competition covenant is supported by valuable and adequate consideration under Virginia law. We frankly admit the question is of substantial difficulty, and would be no less difficult under West Virginia law. In deciding the question, as we must, we are admonished by Justice Holmes in *Southern Pacific Co. v. Jensen*, 244 U.S. 205, 222 (1917) that "[t]he common law is not a brooding omnipresence in the sky but the articulate voice of some sovereign. . ." The sovereign here is the people of Virginia and the voice of

---

[3]Under Virginia law an employment contract which does not specify a specific length of duration is treated in the law as a contract at will which either party has the liberty to terminate on giving reasonable notice of such intent to the other party. *See, Plaskitt v. Black Diamond Trailer Company, Inc.*, 209 Va. 460, 164 S.E.2d 645 (1968).

immuteable expression on this point must come from its court.

The question presented is whether continued employment is adequate consideration to support the imposition of a restrictive covenant not to compete contained in a written contract for an indefinite term of employment when the initial oral contract contained no restrictive covenant and was terminable at will. The decisional law throughout the country is almost equally divided on this point. *See, Annot.* 51 A.L.R.3d 825 (1973). Neither Virginia nor West Virginia has ever addressed the issue.

Of the many cases examined upon the question of what constitutes valid consideration for a restrictive covenant against competition, the case of *Kistler v. O'Brien*, 464 Pa. 475, 347 A.2d 311 (1975) involves factual circumstances most similar to the present case. There a corporation engaged in the sale and service of fire equipment and fire prevention devices sought an injunction to enforce restrictive covenant contained in a written employment contract between itself and a former employee. In that case it was not until the employee had commenced work and inquired about his Blue Cross benefit forms that he was requested by a clerk to sign an "Employment Contract" supposedly in accordance with general practice of the firm. The Supreme Court of Pennsylvania held that where an oral contract of employment had been effected approximately two weeks prior to the execution of a written contract, the employment or continued employment of the employee, in and of itself, did not constitute consideration for the non-competition covenant. The Court found the parties had formed an oral contract of employment at least two weeks prior to the execution of the written contract. In this regard, the Court noted there was no evidence the parties understood the employee was not to become a regular employee until he had signed the restrictive covenant. They also noted the record established both parties understood that the employee was to leave his then

employer and become a regular employee without any promise not to engage in a competitive enterprise.

We believe Virginia's highest court would probably follow the holding in *Kistler* that when the relationship of employer and employee is established without a restrictive covenant not to compete, any agreement thereafter not to compete, must be in the nature of a new contract based upon a new consideration. We would so hold.

The written employment agreement executed on September 20, 1976, contains no provision for his salary or any other beneficial term or condition of employment. The only provision possibly setting forth valuable consideration flowing from the employer to the employee provides "WHEREAS, now the employee desires to be employed by the company ... at Bluefield, Virginia, upon the terms and conditions hereinafter stated ...." This provision, however, by virtue of the existence of the prior oral contract of employment, for all practical purposes promises nothing of value; the plaintiff had already agreed to employ the defendant. The company offered the defendant employee nothing of value for his promise not to compete that had not already been promised.

Although under Virginia law an employment contract of indefinite duration is considered terminable at will upon reasonable notice, *see*, n. 2, *supra*, the argument that the employer's consideration for the non-competition covenant is the forebearance of the lawful right of discharge we find unavailing but not without logical support. Such a rule fails to give any consideration to the reasonable expectation interests of employers and employees. Employers do not employ highly skilled and experienced professionals only to discharge them before they begin work. Common law principles governing employment contracts should not be employed to supply consideration for a non-competition covenant where such provision was not freely bargained for by the parties.

The employee's interest and the circumstances surrounding execution of the written agreement are relevant in determining whether such agreement was supported by consideration. The employee, as earlier discussed, terminated the lease in the Washington, D. C. area and thereafter, in reliance on the agreement, signed a contract to purchase a home located in Bluefield, West Virginia. The record conclusively establishes that it was not until he actually arrived at the employer's plant to commence actual work that he was first presented a purported "Employment Agreement." Under the circumstances in which the employee found himself, it is beyond cavil that his ability to negotiate with respect to the post-employment restraint was markedly diminished. At the very least, the employee was not as freely able to bargain concerning the provision as he was at the time the oral contract of employment was formed. The covenant not to compete was not freely bargained for term or condition of employment, but rather was a term or condition of employment extracted from or imposed upon an employee under circumstances which deprived him of any fair ability to negotiate. Perhaps, as the record strongly suggests, plaintiff's employment practices were not such that the belated presentment of the "Employment Agreement" was a deliberate, intentional bargaining tactic, designed to effectively take this economically valuable bargaining item off the table. Nonetheless, the effect is in the same direction.

For the foregoing reasons, we are of the opinion that the covenant not to compete would be found void for lack of consideration. But even if Virginia would not follow *Kistler, supra,* and that line of authorities, we are of the opinion that the covenant is unenforceable under Virginia law as it constitutes an unreasonable restraint of trade. The provision is broader than necessary to protect the legitimate interests of the employer and is unduly oppressive in curtailing the employee's legitimate efforts to earn a living. The defendant employee correctly contends the restrictive covenant fails to pass muster under the three-prong "unreasonableness" test

employed in Virginia for determining the enforceability of restraints of trade.

Under Virginia law the enforceability of a restrictive covenant in an employment contract depends upon the facts and circumstances in each particular case. *Richardson v. Paxton Co.*, 203 Va. 790, 127 S.E.2d 113 (1962); *Meissel v. Finley*, 198 Va. 577, 95 S.E.2d 186 (1956).

In *Meissel,* the Virginia Supreme Court adopted a three-part test for determining the enforceability of such contracts: (1) Is the restraint, from the standpoint of the employer, reasonable in the sense that it is no greater than is necessary to protect the employer in some legitimate business interest? (2) From the standpoint of the employee, is the restraint reasonable in the sense that it is not unduly harsh and oppressive in curtailing his legitimate efforts to earn a livelihood? (3) Is the restraint reasonable from the standpoint of a sound public policy?

In Virginia the "employer has the burden of proving that the restraint is reasonable and the contract is valid. Since the restraint sought to be imposed restricts the employee in the exercise of a gainful occupation, it is a restraint in trade; as such it is carefully examined and strictly construed before the covenant will be enforced. Moreover, the scope of permissible restraint is more limited between employer and employee than between seller and buyer, and the covenant is construed favorably to the employee." *Linville v. Servisoft of Virginia, Inc.*, 211 Va. 53, 174 S.E.2d 785 (1970), *quoting, Richardson v. Paxton Co.*, 203 Va. 790, 795, 127 S.E.2d 113, 117 (1962).

In *Alston Studios, Inc. v. Lloyd V. Gress & Assoc.*, 492 F.2d 279 (4th Cir. 1974), the United States Court of Appeals for the Fourth Circuit applying Virginia law refused to enforce a covenant not to compete. There a corporation, whose principal activity was the photography of school children, sought to enforce by injunction a contract with a former district sales manager for the company. The company relied on a non-competition pro-

vision which read in material part that "the said [employee] agrees upon termination of said employment as District Sales Manager, he will not continue in the school picture business, either directly or indirectly, for himself or any individual company in said business for a period of two (2) years."

The Court found two obvious problems with the provision. First, the restriction was totally lacking in geographic limitation and second, the limitation was excessively broad as to the activities which it prohibited following termination of employment. Because of the provisions limitless geographic application and its unnecessarily broad encompassment of activities in which the former employee could not engage, the Court held the provision unenforceable and void.

The employer argued that implicit in the contract was the meaning that the former employee was only prohibited from engaging in competition in those geographic areas where he had formerly provided services for the company. The Court rejected the argument reasoning that because restraints of trade are disfavored in Virginia, the language of the agreement was to be strictly construed, *citing, Linville, supra,* and *Richardson, supra.* The Court thus refused to rewrite or "amend" the agreement and declined to enforce in any respect the post-employment restraint on competition. *See particularly, Richardson, supra.*[4]

The post-employment retraint in this case provides that the employee "shall not engage, either directly or indirectly, in any business or enterprise, the nature of which is competitive to the company's business." The duration of the covenant is two years and the geographic limitation is one hundred fifty miles surrounding the City of Bluefield, West Virginia. Enforcing this contract provision literally would preclude the employee from

---

[4]*See also,* H. Blake, "Employee Agreements Not to Compete" 73 Harv. L. Rev. 625, 681-84 (1959-60), for cogent criticism of the general contract doctrine of severence as applied to the field of employee non-competition restraints.

working in any capacity on any type engineering project for any business or enterprise the nature of which is competitive with plaintiff. The provision in this respect is far broader than necessary to protect PEMCO's legitimate business interests in preserving confidential information and is unduly oppressive of the defendant's right to use his unique personal qualities.

The post-employment restraint in issue in this case goes far beyond that which is reasonably necessary to protect any legitimate employer interest. The provision precludes an employee from working for any company which in its nature is in competition with his employer whether or not such enterprise is in fact in competition. A more reasonable provision would have been one which sought to limit the employee's further employment opportunities only to the extent of not using confidential information to assist a competitor. A reasonable covenant with respect to confidential business information acquired by an electronic design engineer would be one narrowly drafted to restrain future work only in particular departments or only in special activities or projects substantially related to the activities performed in the present employment.

Accordingly, we are of the opinion that the Virginia Supreme Court would probably find the instant non-competition clause void for lack of valuable consideration. Furthermore, we are of the opinion that under Virginia law the covenant is an excessively broad and unreasonable restraint of trade. Similarly, we are of the opinion that the plaintiff employer would be held to have failed to meet its burden of proving that the restraint in question is reasonable and the contract is valid.

For the reasons indicated and recognizing that a contract for employment entered into in Virginia, to be performed in Virginia, is governed by Virginia law, the judgment of the trial court is reversed, the temporary injunction dissolved, and the complaint dismissed.

*Reversed and dismissed.*

NEELY, JUSTICE, *dissenting:*

I dissent from the majority opinion not because I necessarily disagree with the result but rather because I object to the analysis employed by this Court in reaching that result. The development of the circumstances surrounding the restrictive covenant in question is insufficient to determine if the contract is an unreasonable restraint on trade. Yet that is precisely what this Court should have focused upon in deciding this case. Instead, the decision turned upon a questionable interpretation of contract law in order to achieve the desired result.

The majority's analysis is faulty in two respects. First, the conclusion that the forbearance from firing an employee does not constitute consideration contradicts traditional contract theory. Secondly, and more importantly, the concentration on the issue of consideration should be omitted if the restriction is unreasonable as the majority also contends. If the restriction is unreasonable, the question of consideration is secondary since covenants not to compete are primarily concerned with restraints on trade. The validity of the contract should be based on the employer's interest in the protection against the use of unfair competitive methods by the employee balanced against the employee's interest in economic mobility and personal freedom to follow his interests. *National Homes Corp. v. Lester Indus., Inc.,* 293 F. Supp. 1025 (W.D. Va.), *aff'd in part and rev'd in part,* 404 F.2d 225 (4th Cir. 1968).

The majority concluded that the continuation of employment at the time of executing a subsequent restrictive covenant did not constitute a new consideration sufficient to support the contract. While the majority correctly noted that the states are almost equally divided on this point, *see Annot.,* 51 A.L.R.3d 825 (1975), the treatises and commentaries find that the forebearance from the lawful right to discharge an employee consti-

tutes sufficient consideration.[1] Had the employee been working for years for the firm before being required to sign the covenant, the consideration issue might be capable of being wedged into existing law, particularly when a gloss of the developing law of "unconscionability" and "contracts of adhesion" is applied to it. From the sparse record in the case before us, however, I doubt that a surprising and unreasonable exercise of coercion constituting unconscionable action (e.g., an ultimatum that a 20 year employee with family responsibilities either sign forthwith or be fired on the spot) exists which would justify application of these doctrines.[2]

Thus this case should have examined whether there was direct competition, whether the employee had

---

[1]In an article cited approvingly by the majority the author concludes that "[T]he almost universally accepted view now is that any substantial performance by the employer (i.e. actual employment of the employee for any substantial period) makes the restraint enforceable against the employee." H. Blake, "Employee Covenants Not to Compete" 73 *Harv. L. Rev.* 625, 669 n. 145 (1959-60). Similarly, "[I]f the employee agreement is for no definite period, or is "at will," a new agreement modifying the salary to be paid or the work to be done is not invalid for lack of sufficient consideration ... the same is true where one party, having a power of termination, forbears to exercise it in return for a new promise." 1A Corbin, Contracts § 175 (1951).

[2]Except for the single case cited by the majority, *Kistler v. O'Brien*, 464 Pa. 475, 347 A.2d 311 (1975), all the cases finding the consideration to be insufficient involved a covenant signed after the employee had already worked for a substantial period of time. While the employee in this case signed the covenant on the day he started his employment, courts have held that restrictive covenants unsupported by any additional consideration are valid even if the employee has already worked for a significant period of time. *Farm Bureau Service Company of Maynard v. Kohls*, 203, N.W.2d 209 (Iowa 1972) (restrictive covenant executed two months after employment began); *Daughtry v. Capital Gas Co.*, 285 Ala. 89, 229 So.2d 480 (1969) (restrictive covenant executed six months after employment began); *McQuown v. Lakeland Window Cleaning Co.*, 136 So.2d 370 (Fla. Dist. Ct. App. 1962) (restrictive covenant executed more than one year after employment began); and *Breed v. National Credit Ass'n*, 211 Ga. 629, 88 S.E.2d 15 (1955) (restrictive covenant executed four months after defendant employed).

knowledge of secret information, whether the time and geographic restraints were too broad, etc. The Court sidestepped these issues and decided that the difficulties would best be overcome by excluding them from consideration. This Court should decide whether the employee's unequal bargaining position resulted in an unreasonable restraint of trade. *Meissel v. Finley,* 198 Va. 577, 95 S.E.2d 186 (1956).