**CIRCUIT COURT OF THE CITY OF ROANOKE**

International Paper Co.,
d/b/a XPEDX

v.

John R. Gilliam, Jr.

December 23, 2003

Case No. CL03-496

BY JUDGE CHARLES N. DORSEY

This matter comes on upon the demurrer of the defendant.

*Facts*

The Roanoke office of International Paper Company ("IPC"), XPEDX division, employed Rick Gilliam as a Sales Representative for twenty-three years prior to his resignation on June 6, 2003. The Roanoke office distributes paper, packaging, equipment, and facility supplies to companies in southern, central, and western Virginia.

On September 4, 2001, Mr. Gilliam executed an agreement with IPC entitled: "Employee Agreement Concerning Inventions, Intellectual Property, Confidential Information, and Conflict of Interest." Bill of Compl., Ex. A. The agreement stated in part:

> In consideration of my employment (or continued employment) with International Paper Company ... and the wages paid to me, I agree as follows:
>
> When I cease my employment with IP, I will not retain any documents containing *Confidential Information* and will promptly deliver to IP any such documents that I have in my possession or under my control. I will not use any Confidential Information for my own purposes or for the purposes of others either in any future jobs or to create Inventions or Intellectual Property.

*Id*. "Confidential Information" is further defined by the agreement as:

> any information possessed or owned by IP which is not generally known to the public, especially if such information gives IP a competitive advantage or its disclosure would harm IP. It includes, but is not limited to, trade secrets, proprietary information, and all other information documents or materials ... relating in any way to IP's ... products or processes, costs or profit information or data from which that information could be derived. ...

*Id*.

After resigning from IPC, Mr. Gilliam accepted employment with one of its competitors, Unisource Worldwide, Inc. ("Unisource"). Unisource had opened a new distribution center in Roanoke. Two other IPC employees resigned from the Roanoke office at the same time as Mr. Gilliam in order to accept employment with Unisource at the new distribution center. Unisource had previously hired another former IPC employee to assist in the opening. IPC alleges that Gilliam and the other IPC employees conspired to "take the accounts for which they were responsible with them to Unisource" and persuade other IPC employees to join Unisource. *Id*. at ¶¶ 13, 15-17.

Four days after his resignation, Mr. Gilliam, acting on behalf of Unisource, transmitted a "Customer Price Sheet" to one of IPC's current customers. The Customer Price Sheet was identical to an IPC Customer Price Sheet that Mr. Gilliam had previously sent to the same customer on behalf of IPC, except the prices were now reduced by exactly 5%. *Id*. at ¶ 19, Ex. B, C. IPC demanded the return of any IPC confidential and proprietary information or documents in Mr. Gilliam's possession, including price lists.

IPC filed its Bill of Complaint on June 24, 2003. IPC alleges seven claims against Mr. Gilliam. Count I asserts Breach of the Confidentiality Agreement cited above. Count II alleges Conversion. Count III claims violation of the

Virginia Uniform Trade Secrets Act. Count IV asserts Breach of Fiduciary Duty. Count V asserts Tortious Interference with Contract. Count VI alleges Conspiracy to Injure Business, and Count VII asserts Common Law Conspiracy. Mr. Gilliam filed specific demurrers to all seven counts.

## Analysis

When ruling on a demurrer, the Court must determine whether the factual allegations in the bill of complaint are sufficient to state a cause of action or facts upon which relief can be granted. Va. Code § 8.01-273(A) (2003). The Court is required to consider as true all material facts that are properly pleaded or implied and all reasonable inferences that can be drawn from these facts. *Riverview Farm Assocs. v. Board of Supervisors*, 259 Va. 419, 427, 528 S.E.2d 99, 103 (2000). "A demurrer does not test matters of proof and, unlike a motion for summary judgment, does not involve evaluating and deciding the merits of a claim; it tests only the sufficiency of factual allegations to determine whether the pleading states a cause of action." *Welding, Inc. v. Bland County Serv. Auth.*, 261 Va. 216, 227-28, 541 S.E.2d 909, 914 (2001). In making this determination, the Court may examine both the substantive allegations contained in the complaint and any accompanying exhibits. *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 24, 431 S.E.2d 277, 279 (1993). As long as a claim contains sufficient allegations of material fact to inform the respondent of its true nature and character, it will withstand demurrer. *Id.*

## A. Breach of Contract

Count I alleges that Mr. Gilliam breached an employee confidentiality agreement by sending a Unisource Customer Price Sheet identical to IPC's customer price sheet to one of IPC's customers. Bill of Compl. at ¶ 18. IPC claims this customer sheet is covered by the employee agreement because it is "confidential information." *Id.* at ¶ 5, 23. Mr. Gilliam demurs to this claim on the grounds that the agreement fails to reference "price lists" or "pricing information," and fails to include these items in its specific definition of confidential information. He argues that the plain terms of the agreement do not establish breach because, as a matter of contract interpretation or construction, a customer price list cannot be considered confidential information.

The Court, at this stage, may not engage in interpretation of mixed factual questions. The agreement plainly states: "Confidential Information, as used in this agreement, includes *but is not limited to* ... trade secrets ... costs or profit

information or data from which the information could be derived." Bill of Compl., Ex. A (emphasis added). IPC alleges that this definition includes price lists and also that price lists are trade secrets. When coupled with sufficient evidence, these facts would permit a recovery under the agreement's terms. Any doubt about the exact nature of this provision, for the purposes of demurrer, must be resolved in favor of the construction given by IPC in its pleadings. *Fun v. Virginia Military Inst.*, 245 Va. 249, 253, 427 S.E.2d 181, 183 (1993).

Likewise, the fact that IPC did not file its price list exhibit under seal does not automatically destroy its ability to be classified as confidential information under the agreement or even as a trade secret. *See Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F:3d 411, 418 (4th Cir. 1999). Success or failure of IPC's breach claim depends on whether the list was confidential information within the terms of the agreement when Mr. Gilliam allegedly used the list on behalf of Unisource. Since this act is alleged to have occurred prior to the public filing of the list, IPC's claim is sufficient to survive demurrer.

Mr. Gilliam also points to a clause of the Confidentiality Agreement that states that it does not "create an implied or expressed contract of employment," Bill of Compl., Ex. A, therefore, he asserts, the agreement is unenforceable. While the paragraph in issue may be poorly drafted, any doubt that it was meant to address the employment "at will" relationship and not the confidentiality provisions of the agreement must also be resolved in favor of IPC, at this stage.

Finally, Mr. Gilliam cites a Fourth Circuit decision, *Mona Elec. Group, Inc. v. Truland Serv. Corp.*, 193 F. Supp. 2d 874, 876 (E.D. Va. 2002), for the proposition that this agreement lacks consideration because it was executed after Mr. Gilliam had been an employee for twenty-one years. Mr. Gilliam appropriately cites *Mona* since it was decided in 2002 and states, in pertinent part:

> Neither the Fourth Circuit nor the Supreme Court of Virginia has addressed this issue [whether consideration for restrictive covenant is supplied by continued employment]. However, the Supreme Court of West Virginia, deciding a contract governed by Virginia law, noted that "Virginia's highest court would probably follow the holding in *Kistler* that when the relationship of employer and employee is established without a restrictive covenant not to compete, any agreement thereafter not to compete, must be in the nature of a new contract based upon new consideration." *Pemco Corp. v. Rose*, 163 W. Va. 420, 427, 257 S.E. 2d 885, 889 (1979) (noting that

"continued employment of the employee, in and of itself, did not constitute consideration for the non-competition covenant"). This Court also holds that the Virginia Supreme Court would find that the mere continuation of employment does not furnish consideration for a non-competition agreement under the facts of this case.

*Id.*

Federal courts, of course, are obligated to accurately apply state decisional law in defining state created rights, obligations, and duties, and must apply those decisions in light of the rules of *stare decisis. New England Mut. Life Ins. Co. v. Mitchell*, 118 F.2d 414, 420 (4th Cir.), *cert. denied*, 314 U.S. 629 (1941); see also 28 U.S.C. § 1652. Virginia's trial courts do not have the discretion to follow Federal case law which contravenes the rulings of our own Supreme Court. "In Virginia, the doctrine of *stare decisis* is more than a mere cliche. ... And when a court of last resort has established a precedent, after full deliberation upon the issue by the court, the precedent will not be treated lightly or ignored. . . ." *Selected Risks Ins. Co. v. Dean*, 233 Va. 260, 265, 355 S.E.2d 579, 581 (1987). Though the *Mona* decision states, in 2002, that the Supreme Court of Virginia had not yet addressed this issue, in fact, it had been addressed thirteen years earlier by the Supreme Court of Virginia when it stated that "even though [the employer] could have terminated the employees at its will after they signed the non-competition agreements, [the employer] continued to employ them and to give them access to valuable information. *This supplied the consideration for their promise not to compete.*" *Paramount Termite Control Co. v. Rector*, 238 Va. 171, 176, 380 S.E.2d 922, 926 (1989) (emphasis added). The trial court opinion in that case, *Paramont Termite Control Co. v. Pest Management Services, Inc.*, 14 Va. Cir. 117, 1988 Va. Cir. LEXIS 261 (1988), specifically cited the *Pemco* rule as being applicable and barring the relief requested. The Supreme Court of Virginia, in reversing the trial court, did not cite *Pemco*. For the issue before the Court in this case, *Mona* is an inaccurate statement of law. Though appropriately cited, it cannot be followed here.

The agreement itself states it is "in consideration of [Gilliam's] employment (or continued employment)." Bill of Compl. Ex. A. On demurrer, with the case authority, this is sufficient to support IPC's contention that the agreement contained bargained for consideration. The demurrer to Count I is overruled.

## B. *Conversion*

The Virginia Uniform Trade Secrets Act ("VUTSA") preempts alternative theories in tort, such as conversion, when it can be "clearly discerned" that the information in question constitutes a trade secret. *Stone Castle Fin., Inc. v. Friedman, Billings, Ramsey & Co.*, 191 F. Supp. 652, 659 (E.D. Va. 2002); *NSW Corp. v. Ferguson*, 49 Va. Cir. 456, 457 (Roanoke City 1999) (finding preemption where "it is *clear* to the Court that the information alleged by the Plaintiff to have been improperly taken *falls well within* the parameters of the statutory definition of 'trade secret' ") (emphasis added). In briefs and oral arguments, counsel for Mr. Gilliam have raised significant questions of fact vigorously opposing the classification of the price list as a trade secret. The VUTSA does not preempt alternative tort recovery unless it is clear that the price list falls within the confines of the Act. At this stage, the evidence is insufficient to reach that conclusion.

Conversion includes "any wrongful exercise or assumption of authority ... over another's goods, depriving him of their possession [and any] act of dominion wrongfully exerted over property in denial of the owner's right, or inconsistent with it." *United Leasing Corp. v. Thrift Ins. Corp.*, 247 Va. 299, 305, 440 S.E.2d 902, 905 (1994) (quoting *Universal C.I.T. Credit Corp. v. Kaplan*, 198 Va. 67, 75, 92 S.E.2d 359, 365 (1956)). At minimum, IPC alleges that Mr. Gilliam had confidential customer pricing lists belonging to IPC in his possession and that he used one of these lists to lure away one of IPC's customers. This entails wrongfully exerting control over the list in a manner inconsistent with IPC's interests and outlines a claim sufficient to survive demurrer.

## C. *Virginia Uniform Trade Secrets Act*

The VUTSA defines trade secrets as "information ... that (1) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Va. Code § 59.1-336; *Dionne v. Southeast Foam Converting & Packaging, Inc.*, 240 Va. 297, 302, 397 S.E.2d 110, 113 (1990). Under this definition, price lists of the kind alleged to have been misappropriated qualify as a trade secret. Lists of this kind might inform a competitor of who IPC's customers were, how to reach them, and exactly what each customer demands at what price, as well as the system IPC developed to service its customers. *See One Stop Deli, Inc. v. Franco's, Inc.*, 1993 U.S. Dist. LEXIS 17295 (W.D.

Va. 1993); *Unisource Worldwide, Inc. v. Valenti*, 196 F. Supp. 2d 269, 278 (E.D. N.Y. 2002) ("Knowledge of a customer's needs and specifications and the prices charged to that customer are considered confidential."). IPC alleges that it took reasonable efforts to keep this information secret.

Our Supreme Court has instructed trial courts not to short-circuit litigation on demurrer. Judges should beware, "lest 'the parties on brief argue the issues as if all the facts outside the pleadings are properly before this Court; they are not'." *NRC Management Services Corp. v. First Va. Bank*,[1] 2003 Va. Cir. LEXIS 120, *5 (quoting *Breeding v. Hensley*, 258 Va. 207, 212, 519 S.E.2d 369 (1999)). Mr. Gilliam's arguments that IPC failed to make reasonable efforts at secrecy or that pricing information was readily ascertainable from IPC's customers may eventually be used to refute its classification as a trade secret, but these facts are in dispute and may not be decided at this stage. The demurrer for this count is overruled.

## D. *Breach of Fiduciary Duty*

IPC alleges breach of common law duties of loyalty, fidelity, and responsibility, including the duty to maintain secrecy of confidential information learned during employment. Though an employee may make certain arrangements during his employment to compete with his employer after resigning, this is not an absolute right. *Williams v. Dominion Tech. Partners*, 265 Va. 280, 289, 576 S.E.2d 752, 757 (2003). It "must be balanced with the importance of the integrity and fairness attaching to the relationship between employer and employee." *Id.* at 289, 576 S.E.2d at 757 (quoting *Feddeman & Co. v. Langan Assoc.*, 260 Va. 35, 42, 530 S.E.2d 668, 672 (2000)). Even after termination of an agency or employment relationship, the agent "has a duty to the principal not to use or to disclose to third persons on his own account or on account of others in competition with the principal or to his injury, trade secrets, written lists of names, or other similar confidential matters given to him only for the principal's use." *Peace v. Conway*, 246 Va. 278, 281-82, 435 S.E.2d 133, 135 (1993) (citing the Restatement (Second) of Agency § 396 (1958)). IPC's combined allegations, particularly those outlining a claim for misappropriation of a trade secret, make out a claim for breach of duty that withstands demurrer.

This ruling is consistent with this Court's decision to sustain a demurrer in *Phoenix Fin. Corp. v. Radford*, 44 Va. Cir. 445 (City of Roanoke 1998). In that case, the "Plaintiff's motion for judgment alleged that Radford was an agent and employee of Crestar [a competitor to Plaintiff] *at the time all*

---

[1] This opinion is printed above at page 68. [Reporter's Note]

*tortious acts occurred." Phoenix,* 44 Va. Cir. at 445-46 (emphasis added). In contrast, the complaint in this case alleges that Mr. Gilliam conspired with other employees to resign *en masse* and take accounts to Unisource while still employed with IPC and, to that end, that Mr. Gilliam misappropriated confidential information entrusted to him as an employee of IPC. This combination of facts occurring before and after termination of Mr. Gilliam's employment is enough to support a claim for breach of fiduciary duty.

## E. *Tortious Interference with Contract*

The elements of tortious interference are: "(1) The existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted." *Duggin v. Adams,* 234 Va. 221, 226, 360 S.E.2d 832, 836 (1987). When, as here, employment relationships appear to be terminable at will, the plaintiff must allege and prove "not only an *intentional* interference that caused the termination of the at-will contract, but also that the defendant employed *improper* methods." *Id.* at 226-27, 360 S.E.2d at 836 (emphasis added).

IPC asserts that Mr. Gilliam tortiously and intentionally interfered with its customers by using its trade secrets and/or confidential information to induce customers to transfer accounts to Unisource. Further, IPC alleges damages and represented at oral argument that they lost an important customer as a result of Mr. Gilliam's actions. IPC's claim addresses each of the required factors, and either misappropriation of a trade secret or use of confidential information in violation of a confidentiality agreement would satisfy the "improper methods" requirement. Therefore IPC states a claim for tortious interference and Mr. Gilliam's demurrer is overruled.

## F. *Business Conspiracy*

Va. Code §§ 18.2-499 and 18.2-500 create a cause of action for conspiracy where two or more persons intentionally and without legal justification, "combine, associate, agree, mutually undertake, or concert together" for the purpose of injuring a plaintiff's business and, as a result of that conspiracy, the plaintiff suffered financial harm. *Williams,* 265 Va. at 290, 576 S.E.2d at 758. Establishing such a conspiracy does not require proof that the conspirators' "primary and overriding purpose is to injure another." *Advanced Marine Enterprises v. PRC, Inc.,* 256 Va. 106, 117, 501 S.E.2d

148, 154. It need only be intentional, purposeful, and without legal justification. *Id.* Thus, in *Advanced Marine Enterprises,* business conspiracy was established when managers and employees planned and executed a mass resignation without notice to their employer. *Id.* at 117-18, 501 S.E.2d at 155. They took original client documents and copies of documents containing confidential and proprietary information without their employer's permission or knowledge. *Id.*

Similarly, IPC asserts that Mr. Gilliam and two other former IPC employees conspired to injure IPC by leaving the company *en masse* to work at Unisource and to take the accounts for which they were responsible. Further Mr. Gilliam is claimed to have taken and used documents that are alleged to be confidential trade secrets. Again, there may be facts introduced at trial that ultimately serve to defeat this claim, including Mr. Gilliam's assertions that he did not possess an actionable level of intent or that IPC will not be able to establish the actions were without legal justification. On demurrer, however, these disputes are beyond the scope of the Court's inquiry. IPC has stated an adequate claim.

### G. *Common Law Conspiracy*

Although common law conspiracy requires proof of different elements than its statutory counterpart, Mr. Gilliam's demurrer is overruled for the same reason. Common law conspiracy can be found to exist where "two or more persons combined to accomplish, by some concerted action, some criminal or unlawful purpose, or some lawful purpose by a criminal or unlawful means." *Commercial Bus. Sys. v. BellSouth Servs.,* 249 Va. 39, 48, 453 S.E.2d 261, 267 (1995) (citations omitted). As the Supreme Court noted in *CaterCorp, Inc. v. Catering Concepts, Inc.,* allegations that employees conspired to breach their fiduciary, contractual, employment, and other duties to plaintiff, including unlawful conversion by them of plaintiff's confidential and proprietary information entail sufficient unlawful purposes to ground a claim for common law conspiracy. 246 Va. 22, 26, 431 S.E.2d 277, 281 (1993). IPC claims that Gilliam and others acted in concert to damage IPC's business intentionally, maliciously, and without lawful justification through breach of fiduciary and employment duties similar to those listed in *CaterCorp.* This is sufficient to withstand demurrer.

As all claims have been adjudged to contain sufficient grounds upon which relief can be granted, each demurrer is overruled.