DI-DEELAND, INC.

*v.*

PAUL E. COLVIN et ux.

(*Knoxville*, September Term, (May Session) 1960.)

Opinion filed May 26, 1961.

FOLTS, BISHOP, THOMAS, LEITNER & MANN, Chattanooga, for appellant.

TABER, CHAMBLISS & STOPHEL, Chattanooga, for appellees.

. MR. JUSTICE BURNETT, delivered the opinion of the Court.

This suit was filed for an injunction and damages for a breach of contract by an employer against a former employee. The question now presented resolves itself into whether or not a written contract between an employer and his employee, restricting the right of that employee to compete with the employer for a period of six months after termination of his employment, is enforceable, or whether that employee is free to do as he pleases with regard to what he has learned through this employment. If the contract is void, as held by the Chancellor, there is no question as to the right of damages by the appellant against the appellee, but, if the contract is a valid contract, the matter will have to be remanded to the Chancery Court for the purpose of taking proof and seeing whether or not the appellant has been damaged by reason of a breach of a valid contract.

The Chancellor denied the injunction, and we, on a preliminary application to a member of this Court to

keep the injunction in force, denied the application, because it was the opinion of the member of this Court handling that question that the Chancellor had not abused his discretion in failing to keep the injunction in force pending an appeal.

The case has been seasonably appealed, able arguments heard, briefs filed, and we, after carefully reading the record, authorities cited, and making a rather extensive independent investigation, are now in a position to decide the matter as we think it should be decided.

For some ten or eleven years the appellee, Colvin, worked in the diaper laundry business in Chattanooga for one, Herman Robinson. In 1956, Robinson sold the business to the appellant, Di-Deeland, Inc., and Colvin continued as an employee of Di-Deeland. On May 29, 1959, Colvin and Di-Deeland entered into a contract, which is filed as an exhibit to the bill, wherein Colvin, the employee, for and in consideration of the compensation to be paid him as such employee and in consideration of his being so employed and 'for other good and valuable consideration'', agreed that if for any reason the employment was terminated that he would not go into a competing business within six months after the termination of said employment within a radius of forty-five miles from employer's plant in Chattanooga. He further agreed that he would not give or divulge to others the secrets or experience or things of that kind that he had learned by reason of his long association in this business, and that he would not directly or indirectly solicit or attempt to solicit any of the customers of Di-Deeland.

The third clause of said contract is:

"Said employment may be terminated by either party by giving two weeks notice to the other, provided, however, that employer may discharge employee for cause without advance notice. Whenever notice hereunder is required of employer, it shall have the option of electing to pay employee two weeks' compensation in lieu of such notice."

Under the demurrer filed to the bill the Chancellor concluded that the contract was void because there was no mutuality in the fact that Colvin could be fired at any time and was given no consideration for the employment other than what he was paid and that since he could be fired for cause and that question was one purely in the mind of the employer, that there was really no consideration for the employment, and thus the contract was void.

There are literally thousands of cases involving various and sundry situations wherein related contract situations involving different factual allegations and terms have been considered by the courts. An extremely interesting and well written annotation on the subject is contained in 46 A.L.R.2d, beginning at page 119 and ending at page 396. A like annotation equally as extensive is reported in 43 A.L.R.2d, beginning at page 94 and ending at page 321. Among cases cited at various and sundry points in these annotations are our Tennessee cases.

Basically whether or not such a contract is valid and enforceable depends upon whether or not it is reasonable under the particular circumstances. This question, the rule of reasonableness applied to these contracts, applies equally to territorial limits, time, consideration, etc. The rule of reasonableness is discussed in Restatement, Contracts, Sections 515 and 516, respectively, wherein vari-

ous and sundry situations are set forth. The author of that work in Section 516 says:

"The following bargains do not impose unreasonable restraint of trade unless effecting, or forming part of a plan to effect, a monopoly:

\* \* \* \* \* \*

"(f) A bargain by an assistant, servant, or agent not to compete with his employer, or principal, during the term of the employment or agency, or thereafter, within such territory and during such time as may be reasonably necessary for the protection of the employer or principle, without imposing undue hardship on the employee or agent."

Under this sub-division if the allegations of the bill herein meet this rule of reasonableness then the contract should be enforced. The annotator in 46 A.L.R.2d, at page 201, makes this very interesting and pertinent comment, to wit:

"To hold unenforceable the contract of the vendor not to compete, where unrestrained competition would effectively diminish the value of good will sold, would prevent good will from being transferred for an adequate consideration. The balance of social interest favors allowing a man freedom to restrain himself from carrying on a particular business in order that he may be able to sell a valuable business asset which he has developed. Generally speaking, the extent to which a seller may restrain himself from carrying on the trade or business will depend on how far such restraint is necessary to prevent interference with the good will sold."

This reasoning applies equally to an employee who enters into such contract in consideration of his employment and his knowledge of the work that he is doing for the employer.

The closest case that we have in this State to the question here involved is that of *Matthews v. Barnes,* 155 Tenn. 110, 293 S.W. 993, 52 A.L.R. 1350. In that case the employee of Rent-A-Ford Company whose duties consisted of having charge of his employer's office and who had access to a list of customers of his employer and an opportunity to learn the latter's business and secrets, agreed not to engage in a similar business for himself or another within the county wherein he was employed for a period of five years after the termination of the employment. This Court stated in that opinion that the parties were engaged in a practically new enterprise and were operating under a system which they desired to keep secret from their competitors; that they had a valuable list of customers which they did not want disclosed to their competitors; and that by virtue of Barnes' employment, the employee became thoroughly familiar with his employer's system, and well acquainted with the latter's customers, and that under the circumstances it was not difficult to understand how the employer might be injured by the employee's engaging in a competitive business, and thus for these reasons this Court sustained an injunction. Factually the almost identical allegations are alleged here against Colvin when he left his employment and went out to compete against the employer. The consideration likewise in the Barnes case was about the same, in fact almost identical, with that in the contract in the instant case, that is, the consideration was of the employment. The two cases, and the reasoning applicable,

that is, in the Barnes case and the instant case, are and should be parallel.

There are a number of cases involving the driver of a laundry wagon wherein the courts have upheld the restrictive covenant against the driver where he went to other employment. These cases, the factual situation and the question of reasonableness as to the acts committed are very applicable to the case under consideration. In *Axelson v. Columbine Laundry Co.,* 81 Colo. 254, 254 P. 990, the court held that the restriction was reasonable. In this case the driver of a laundry wagon, who also solicited laundry, agreed that in the event of the termination of his employment, either voluntarily or involuntarily on his part, he would not for a period of six months thereafter enter into a business of collecting and soliciting laundry work on his own account or as an employee or on behalf of anybody else or any corporation, in such a way as in any wise would interfere with the good will of said employer, or attempt to influence, solicit, or take away for himself, or any other person, persons, firm, or corporation, the customers of his employer within the city and county of Denver. There is also a very similar case in Georgia, that of *National Linen Service Corporation v. Clower,* 179 Ga. 136, 175 S.E. 460, wherein the court held that the contract was valid and would be enforced and that it did not constitute an unreasonable restraint of trade or an unwarrantable infringing on the employer's right to pursue his chosen occupation. There are in these annotations literally hundreds of cases pro and con depending largely upon the question of whether or not the restraint was reasonable.

■ After thoroughly considering the matter we are convinced that there is sufficient consideration to support this contract and that the terms thereof are reasonable.

■ We do not find sufficient allegations or averments from the facts herein to hold or say that Colvin's wife is guilty of a conspiracy so as to make her liable under Section 47-1706, T.C.A., and insofar as the wife is concerned the action of the Chancellor will be affirmed and the bill dismissed as to her. As to the employee who signed this contract we, deeming it a valid contract, must reverse the decree below and remand the cause for proof as to whether or not any damages are due appellant by reason of the acts of Colvin pursuant to what has been said herein above.