STOULIG, Judge.
Plaintiff, Beaver Productions, Inc. (Beaver), filed suit to enjoin William J. Johnston, III, from engaging in rock and roll concert promotional activity and to prevent the other defendants from assisting him in these endeavors.
Plaintiff alleges that Johnston, formerly a stockholder and promotion man in Beaver, signed an agreement not to compete with plaintiff when he sold his stock in the corporation. Defendant Johnston admitted executing the agreement and engaging in promotional activities prohibited by it thereafter, but avers it is invalid because of the lack of serious consideration. The remaining defendants pleaded exceptions of no right or cause of action, which were referred to the merits.
From a judgment dismissing plaintiff’s suit, it has appealed.
Prior to 1975, Johnston, Brian Glynn and Don Fox were principal stockholders in Beaver, a corporation engaged in promoting and staging rock and roll concerts primarily in the New Orleans area. On January 2, 1975, after Don Fox had a fight with the art director, Johnston declared his intent to leave the company and sell his stock. Glynn and Fox agreed to buy him out. Daniel Lund, attorney for Beaver, was asked to prepare the necessary documents to effectuate the transfer, and at a conference at his office on January 27, 1975 the stockholders met to sign the following papers:
1. Minutes of a meeting of the board of directors noting Johnston offered to sell and the corporation rejected his proposal to transfer 301 shares of Beaver stock for $5,000, and resolving he could sell his stock to Glynn and Fox for the same consideration, and further resolving to pay Johnston the $3,000 indebtedness acknowledged due him from the corporation; and resolving to hold him harmless for any future corporate debts;
2. An offer to the corporation to sell stock for $5,000 and a written rejection by the corporation;
3. A letter of resignation by Johnston to the board;
4. A letter from Beaver to Johnston in which the corporation agrees to “hold you harmless from and against any and all liability or debts of the Corporation which may have been incurred heretofore”; and
5. An offer by Glynn and Fox to Johnston, which reads:
“We hereby offer to purchase your three hundred and one (301) shares of Beaver Productions, Inc. for the price and sum of Five Thousand ($5,000.00) Dollars, payable in full, in cash, on January 27, 1975, 150j4 shares to each of us.”
After the participants had executed the documents under Lund’s direction, Fox produced the noncompetition agreement ’ which is the subject of this lawsuit and directed Johnston to sign. Lund testified he had not prepared the agreement and had not been apprised of it before the sale of stock had been consummated. In fact he felt obligated to caution all present he was *61 “rendering no opinions concerning the document.” It stipulates:
“AGREEMENT BETWEEN MR. WILLIAM J. JOHNSTON III AND BEAVER PRODUCTIONS, INC.
RE: Concert promotions
By this agreement between William J. Johnston and BEAVER PRODUCTIONS INC., I, William J. Johnston, agree that from this date, January 27, 1975 through January 26, 1980, that I will neither be a principle [sic] in a concert promotion company of any type nor will I act in such a manner as to promote concerts in the areas including Louisiana, Texas, Oklahoma, Missouri, Mississippi, Alabama, and Massachusetts.”
If we review the documents in light of what they recite, we obviously must conclude there was no consideration whatsoever flowing from the corporation to Johnston for the noncompetition agreement. The corporation rejected Johnston’s offer to sell it his stock for $5,000 and simply relieved him for any individual liability in connection with corporate debts. As a matter of law, he was never individually liable; therefore, Johnston derived no benefit from the “hold harmless” agreement. The instruments prepared by Lund recite $5,000 was paid as consideration for the sale of stock. There is nothing mentioned about a noncompetition agreement nor was Lund, who drafted the sales transaction papers, even made aware that such a stipulation was in the offing.
But were we to assume arguendo that the individual stockholders and the corporation were in fact one individual entity, the agreement not to compete must fail because it obviously is not supported by serious consideration nor is it confined to a reasonable area. Under the agreement Johnston would be bound not to promote rock concerts in a seven-state area for a period of five years. Appellant does not indicate what part of the $5,000 was tendered by plaintiff for the stock and what part was given for the agreement not to compete. Nor are we apprised of the value of the stock. The only evidence we have is that Beaver’s net earnings before taxes for 1974 was $107,600, and while this does not give a precise value as to one-third of the stock, it'Certainly indicates the corporation’s stock has some monetary value.
Appellant has cited numerous decisions in which agreements not to compete have been upheld by Louisiana courts; however, they are distinguishable because the agreement in these cases was supported by serious consideration. In fact in one of the cases cited, Desselle v. Petrossi, 207 So.2d 190, 192 (La.App. 4th Cir. 1968), the court reiterates the principles involved in a case of this nature as follows:
“The trial judge then applied the principles found in S. & R. Gas Company v. Stephens, 90 So.2d 487, 499-500 (La. App.2d Cir. 1956), wherein the court said:
“ ‘Counsel for defendant urges three general principles of law, with all of which we are in complete agreement.
“‘First: contracts in restraint of trade should be strictly construed; Railway Audit & Inspection Co., Inc., v. Pendleton, 175 La. 4, 142 So. 781; Simmons v. Johnson, La.App., 11 So. 2d 710.
“ ‘Second: contracts in restraint of trade should not be enforced unless supported by serious consideration, and,
“ ‘Third: where there is a dispute over the provisions as to the meaning of contract stipulations the instrument must be interpreted against the party by whom or for whom it was prepared.’ ”
Applying the first and second rule above quoted, we conclude the trial judge proper *62 ly refused to grant the injunctive relief requested.
For the reasons assigned the judgment appealed from is affirmed.
AFFIRMED.