**CENTRAL ADJUSTMENT BUREAU, INC., Plaintiff-Appellant,**

v.

**Henry Preston INGRAM, Richard B. Goostree, James C. Bjorkholm, Jr., and Ingram & Associates, Inc., Defendants-Appellees.**

Supreme Court of Tennessee, at Nashville.

Sept. 17, 1984.

Frank C. Gorrell, Jay S. Bowen, Judith A. Powell, Nashville, for plaintiff-appellant.

Fred D. Thompson, Ronald W. Routson, Nashville, for defendants-appellees.

## OPINION

DROWOTA, Justice.

This appeal under Rule 11, Tenn.R. App.P., involves non-competition clauses in employment contracts. It raises an issue regarding the consideration necessary to support such a covenant when it is entered into after employment has begun. In addition, the Court addresses the issue of whether a covenant not to compete, the geographic and time limitations of which are unnecessarily broad, can be judicially modified so as to make the covenant reasonable and enforceable.

### I

The plaintiff-employer, Central Adjustment Bureau, a Texas corporation whose home office is in Dallas, Texas, is qualified to do business in Tennessee as a collector of past-due debts. It has 25 branch offices throughout the United States, including a branch in Nashville, Tennessee. The defendants are former employees who left Central Adjustment Bureau (hereinafter CAB) in 1979 to form Ingram & Associates, a company which competed directly with CAB. All of the defendants had signed covenants not to compete with CAB. After the defendants left, CAB brought suit in Chancery Court seeking both compensatory and injunctive relief. According to CAB's allegations, the defendants were liable in tort and for breach of the non-competition covenants.

The Chancellor found that the non-competition covenants were unreasonably broad with regard to geographical and time limitations. The Chancellor, however, modified these restrictions enforcing them as modified by injunctive relief. In addition, the Chancellor awarded the plaintiff $80,000.00 in damages for the breach of the covenants and for the torts of unfair competition and breach of the duty of loyalty.

The Court of Appeals reversed the Chancellor on the issue of the covenant not to compete, holding that the covenants were unenforceable for lack of consideration. As an additional ground for its decision, it held, without discussing the issue of modification, that the covenants were unenforceable because they were unreasonably broad in their geographic and time limitations. The Court of Appeals affirmed the defendants' liability in tort, though it remanded the case for reconsideration of damages. The defendants' tort liability is not disputed before this Court.

## II

The collection industry with approximately 8,000 agencies nationwide is highly competitive. Agencies operate essentially in the same manner regardless of size. Salespersons contact businesses and solicit past-due accounts for collection. Collectors then contact the debtors and attempt to collect the money owed. The agency receives a fee consisting of a percentage of the amount recovered. This percentage is generally set by agreement between the salesperson and the client.

Most clients use more than one collection agency. The primary factor in choosing an agency is the rate of return to the client, although the rate charged the client, the services available from the agency and the personal contact between a client and the agency salesperson are also factors.

CAB's business is national in scope, covering 48 states including Hawaii. It specializes in national accounts such as hospital holding companies, universities, major oil companies, credit card companies and financial institutions.

Defendant Henry Preston Ingram was hired on March 1, 1970, by CAB as a salesman in North Carolina with a base salary of $600.00 monthly plus commissions. A week after he began working, CAB informed him that he must sign a covenant not to compete. Ingram initially refused to sign, but under threat of termination, he signed two weeks later.

In June, 1972, CAB promoted Ingram to manager of the Nashville district. Ingram was promoted in June, 1977, to manager of the northern region of CAB. CAB is divided into three regions nationwide. The northern region which was headquartered in Nashville included Kentucky and Tennessee as well as most of the states in the midwestern, northeastern and mid-Atlantic areas of the United States. As a regional manager, Ingram was employed in the highest corporate position outside that of an officer.

Ingram resigned from CAB on February 22, 1979. At that time, he was the fifth highest paid employee at CAB. In 1978, he received more than $59,000.00 in compensation.

Defendant Richard B. Goostree was hired as a collector in the Nashville office on March 6, 1972, at a base salary of $500.00 monthly plus commissions. Prior to beginning employment, he was not informed that he would be required to sign a covenant not to compete. It was presented to him and signed on March 7, 1972.

Goostree received a promotion to collections manager in April, 1973. In June, 1977, he was promoted to district manager of the Nashville office.

Defendant James Bjorkholm was hired as a salesman for the Nashville office on May 5, 1977, at a base salary of $750.00 a month plus commissions and an automobile allowance. He signed a non-competition covenant three weeks later. This agreement was lost, however, and another was signed on August 8, 1977. Bjorkholm received one $50.00 raise in his base salary while at CAB, but no promotions.

The covenant was identical in each case, providing as follows:

"I, /s/_____, the undersigned, during the term of my employment with Central Adjustment Bureau, Inc., and/or its wholly-owned subsidiaries, and at any time within two years of termination thereof, shall not compete within the United States, either directly or indirectly, with the corporation (1) by owning, operating, managing, being employed by, having a proprietary interest of any kind in, or extending financial credit to any person, enterprise, firm or corporation which is engaged in any business in which the corporation is engaged or directly or indirectly competes with the corporation in any manner; (2) by divulging any information pertaining to the business, trade secrets, and/or confidential data of the corporation, or make any use whatsoever of the same; or (3) by contacting any client or customer of the corporation who has been a client or customer of the corporation during the term of employment.

"I fully understand that the corporation will rely on this covenant in employing me, and I agree that in the event of any breach of this covenant that the corporation's damages are irreparable and that the corporation shall be entitled to injunctive relief, in addition to such other and further relief as may be proper. It is further agreed that if at any time it shall be determined that this covenant is unreasonable as to time or area, or both, by any court of competent jurisdiction, the corporation shall be entitled to enforce this covenant for such period of time and within such area as may be determined to be reasonable by such court. In the event of breach of this covenant, I agree to pay all costs of enforcement of the said covenant, including, but not limited to, reasonable attorney's fees."

On January 26, 1979, Ingram filed a charter of incorporation with the State of Tennessee for a corporation by the name of Ingram Associates, Inc., the purposes of which included engaging in the debt collection business. In January or early February, 1979, Ingram applied for a license in both Kentucky and Tennessee to operate a collection agency; he opened bank accounts for Ingram & Associates in Nashville and Louisville; and he began to collect master client lists and other information from other CAB offices around the country to use in his own business.

Ingram resigned from CAB on February 22, 1979; Goostree and Bjorkholm resigned in March, 1979. On March 10, 1979, Ingram, Goostree and Bjorkholm of the Nashville CAB office met with Kathleen Garrison, David Powers and Anthony Schweitzer to finalize the formation of Ingram & Associates. Ingram was to hold sixty per cent of the outstanding stock with Powers, Bjorkholm, Garrison and Goostree each holding ten per cent.[1]

On or about March 22, 1979, Ingram & Associates began actively functioning in the collection agency business. Both prior and subsequent to this date, the new venture solicited CAB customers, making use of personal contacts gained by the defendants while employed by CAB.

The Chancellor found that the defendants

"... utilized valuable knowledge and personal contacts gained and developed while they were CAB employees. They know which potential customers are likely to be profitable, and how to secure, retain and service customers. They have been able to profit from the personal relationships they developed with CAB customers...."

The record amply supports the findings. It is undisputed that defendant Ingram made plans and took actions prior to his resignation to acquire a proprietary interest in a collection agency, which was intended to operate in direct competition with CAB. For instance, prior to leaving CAB, defendant Ingram obtained from various CAB branch officers client information sheets deemed confidential by CAB. These sheets set forth information valuable to any competitor of CAB, including the names of the client contacts, collection, legal, accounting and special requirements of each client as well as the commission charged each client by CAB. Through its access to this and similar information, Ingram & Associates was able to make proposals to major CAB clients which undercut the CAB rate of commission. Other documents indicate that Ingram & Associates in its effort to attract clients made extensive use of the good will and personal contacts developed by the defendants while working for CAB.

## III

As a general rule, restrictive covenants in employment contracts will be enforced if they are reasonable under the particular circumstances. *Allright Auto*

---

1. CAB also sued Ingram, Garrison, Powers and Schweitzer in Kentucky. The Kentucky Court of Appeals held that the covenant was enforceable against the defendants. *Central Adjust-*

*ment Bureau v. Ingram,* etc., 622 S.W.2d 681 (Ky.App.1981). For the reasoning of the Kentucky court, see p. 34, *infra*, of this opinion.

*Parks, Inc. v. Berry*, 219 Tenn. 280, 409 S.W.2d 361 (1966). The rule of reasonableness applies to consideration as well as to other matters such as territorial and time limitations. *Di Deeland v. Colvin*, 208 Tenn. 551, 554, 347 S.W.2d 483, 484 (1961). Whether there is adequate consideration to support a non-competition covenant signed during an on-going employment relationship depends upon the facts of each case. *Davies & Davies Agency, Inc. v. Davies*, 298 N.W.2d 127 (Minn.1980).

The first question before us is whether future employment of an at-will employee constitutes consideration for a non-competition covenant. In *Ramsey v. Mutual Supply Co.*, 58 Tenn.App. 164, 427 S.W.2d 849 (1968), Ramsey agreed to a non-competition covenant with his employer, Mutual Supply Company, "at the time of such employment." 427 S.W.2d at 850. Ramsey's employment lasted nearly two and a half years before he left to work for a competitor. When Mutual Supply brought suit to enforce the covenant, Ramsey argued that employment was not sufficient consideration. The court rejected that argument, holding

> "that employment, even for an indefinite period of time, subject to termination at the option of the employer is sufficient consideration to support such a contract." Id. 427 S.W.2d at 852.

■ *Ramsey* is thus authority for the proposition that employment is sufficient consideration for a covenant which is part of the original employment agreement. The contention is made, however, that the employee must be informed of the covenant during employment negotiations before beginning employment. It is argued that if the covenant is not presented to the employee until the first day at work or shortly thereafter, the covenant is not the subject of free bargaining.

Such an argument, if accepted, threatens to vitiate any agreement between an employee already working and his or her employer. *See McQuown v. Lakeland Window Cleaning Co.*, 136 So.2d 370 (Fla.App. 1962). We hold that a covenant signed prior to, contemporaneously with or shortly after employment begins is part of the original agreement, and that therefore, under *Ramsey*, it is supported by adequate consideration.

■ For this reason, we find that there is adequate consideration to support defendant Goostree's covenant. According to an exhibit filed by CAB, Goostree began working for CAB on March 6, 1972. He signed the covenant not to compete on March 7, 1972. Under these circumstances, the covenant was clearly part of the original employment agreement.[2]

Even when the covenant is not signed until after employment has begun, courts in the following states have found continued employment to be sufficient consideration: Alabama, Connecticut, Florida, Georgia, Iowa, Kentucky, Massachusetts, Mississippi, Missouri, New Hampshire, New Jersey and Texas. *See* generally Annot. 51 A.L.R.3d 825 (1973). Some of these courts reason that the mutual promises of the parties as to continued employment form a binding bilateral contract with the promise of employment constituting sufficient consideration. *See, e.g. Sherman v. Pfefferkorn*, 241 Mass. 468, 135 N.E. 568 (1922); *Reed, Roberts Associates, Inc. v. Bailenson*, 537 S.W.2d 238 (Mo.App.1976). Other courts, however, regard the mere promise of continued employment as not binding on the employee where the employment is one at-will. They nevertheless regard the covenant as binding if there is actual performance of the promise of continued employment.

In *Thomas v. Coastal Industrial Services*, 214 Ga. 832, 108 S.E.2d 328 (1959), the court stated its reasoning as follows:

> "Though a promise may be *nudum pactum* when made because the promisee is not bound, it becomes binding when he

---

2. In so holding, we view the record in the light most favorable to the defendant. The covenant itself is dated March 3, 1972. Goostree's testimony suggests that he began working on that same day.

subsequently furnishes the consideration contemplated by doing what he was expected to do." *Id.* 108 S.E.2d at 329. The court thus held that although there was no mutuality or consideration to bind the employer when an employee, already employed, signed a non-competition covenant, performance under the contract supplied the mutuality and consideration necessary to make the contract binding. The Kentucky Court of Appeals relied on *Thomas v. Coastal Industrial Services, Inc.,* in holding that a covenant is enforceable "provided the employer continues to employ the employee for an appreciable length of time after he signs the covenant, and the employee severs his relationship with his employer by voluntarily resigning." *CAB v. Ingram, supra,* 622 S.W.2d at 685. *See,* also, *McAnally v. Person,* 57 S.W.2d 945 (Tex.Civ.App.1933) ("One cannot successfully plead a want of consideration, or unilateralness, in a contract which he has performed in whole or in part." *Id.* at 948); *Roessler v. Burwell,* 119 Conn. 289, 176 A. 126 (1934) (Employed over 4 years after signing covenant); *Hogan v. Bergen Brunswig Corp.,* 153 N.J.Super. 37, 378 A.2d 1164 (1977) (continuation of employment for 3 years held sufficient consideration); *Frierson v. Sheppard Building Supply Co.,* 247 Miss. 157, 154 So.2d 151 (1963) (Employed for four years); *Stokes v. Moore,* 262 Ala. 59, 77 So.2d 331 (1955) (actual employment in excess of four years rendered enforceable contract unilateral at its inception).

The defendant contends, however, that Tennessee has rejected this reasoning, adhering instead to the rule that the mere fact of continued employment will not support a non-competition covenant signed subsequent to employment, relying on *Associated Dairies, Inc. v. Ray Moss Farms, Inc.,* et al, 205 Tenn. 268, 326 S.W.2d 458 (1959). In *Ray Moss,* the non-competition covenant signed by the defendant employee was not part of the original agreement, although the opinion does not state how long the employee, Ralph Byrum, had worked for Associated Dairies when he signed the covenant. In consideration for

the covenant, Associated Dairies agreed only to retain Byrum in employment at will. The Court held that there was no consideration since Associated Dairies was not bound by the agreement to retain Byrum for even a single day.

We disagree with the defendants' interpretation of *Ray Moss.* The court there decided only the question of whether the *promise* of continued employment standing alone is sufficient consideration for a non-competition covenant signed after employment has begun. It did not address the issue of consideration when employment has in fact continued for an appreciable period of time. Indeed, the opinion does not indicate how long Byrum remained with Associated Dairies after he signed the covenant.

■ Thus, if there has been actual performance in the form of continued employment, the inquiry must move beyond *Ray Moss.* In *Hoyt v. Hoyt,* 213 Tenn. 117, 372 S.W.2d 300 (1963), this Court stated:

"The authorities are uniform in holding that where there has been full or substantial performance by one party to a bilateral contract, originally invalid for want of mutuality of obligation, the other party cannot refuse performance after receiving the promised benefits. [Citations omitted] ... Williston and Corbin contend that once performance is made of the counter-promise (Appellee's here) the other promise (Appellant's promise) becomes binding as sufficient consideration has been received for it. By this view a binding unilateral contract is forged out of a former, invalid bilateral contract."

*Id.* at 128–29, 372 S.W.2d at 305.

We are persuaded that the doctrine stated in *Hoyt* should be applied in cases involving non-competition covenants. Such an approach is in agreement with the decisions of our sister state courts cited above. Moreover, it does not require that we overrule *Ray Moss;* rather, *Ray Moss* remains good law when the only consideration is the promise of continued employment.

■ Whether performance is sufficient to support a covenant not to compete depends upon the facts and circumstances of each case. The requirement that consideration for a non-competition covenant be reasonable remains. *Di Deeland v. Colvin, supra.* It is possible, for instance, that employment for only a short period of time would be insufficient consideration under the circumstances. *See, e.g., Frierson v. Sheppard Building Supply Co.,* 247 Miss. 157, 154 So.2d 151, 154 (1963) ("If appellant had been discharged shortly after signing the agreement, this Court would probably hold the agreement was not supported by consideration"). Another factor affecting reasonableness is the circumstances under which an employee leaves. Although an at-will employee can be discharged for any reason without breach of the contract, a discharge which is arbitrary, capricious or in bad faith clearly has a bearing on whether a court of equity should enforce a non-competition covenant. *Id.,* 154 So.2d at 155; Gibson's Suits in Chancery § 18 (6th ed. 1982).

■ We find that because of the length of employment of each defendant, the covenant is binding against them. Defendants Ingram and Goostree remained with CAB for seven years after signing the covenants while defendant Bjorkholm was employed for two years. Each defendant left voluntarily; there is no evidence that CAB acted in bad faith or with unclean hands. It is unnecessary at this time to say how long employment must continue before there is substantial performance under the doctrine of *Hoyt v. Hoyt* discussed above. The length of employment of each defendant in this case is sufficient to constitute substantial performance.

In addition, we note that defendant Ingram received numerous salary increases while employed at CAB. Beginning as a salesman, Ingram advanced until at the time of his resignation, he occupied one of the highest positions in the company. Defendant Goostree also received numerous salary increases as well as two promotions. He had risen to the position of Nashville district manager at the time he resigned from CAB in order to compete with it in the Nashville area.

Some courts which have required additional consideration other than continued employment have held that a beneficial change in an employee's status constitutes sufficient consideration to support a restrictive covenant agreed to after the initial taking of employment. *See M.S. Jacobs and Associates, Inc. v. Duffley,* 452 Pa. 143, 303 A.2d 921 (1973); *Faw, Casson & Co. v. Cranston,* 375 A.2d 463 (Del.Ch. 1977). In *Davies & Davies Agency, Inc. v. Davies,* 298 N.W.2d 127 (Minn.1980), the employee signed the covenant after his employment began. In enforcing the covenant, the court found decisive the fact that because he had signed the covenant, he had advanced to a responsible selling position in his ten years with the firm, and had in effect taken over one aspect of the firm's business which had become identified with him.

As in *Davies & Davies,* defendants Ingram and Goostree received additional benefits above and beyond continued employment which they would not have received had they not signed the covenants. The fact of these additional benefits shows the extent to which CAB performed under its contracts with Ingram and Goostree. For this additional reason, we hold that the covenants are supported by sufficient consideration.

IV

In *Allright Auto Parks, Inc. v. Berry,* 219 Tenn. 280, 409 S.W.2d 361 (1966) this Court held that "the time and territorial limits involved must be no greater than is necessary to protect the business interests of the employer." In the instant case the Chancellor found that Central Adjustment Bureau had a legitimate business interest to be protected by the noncompetition covenants and that the defendants' competition damaged that interest. The record supports that finding.

The Chancellor held that although Central Adjustment Bureau had such a legiti-

mate business interest to protect, the covenants sought to be enforced were unreasonably broad. He found that the two year limitation was unreasonable but enforced a one year limitation. He based this upon a finding that when clients of a collection agency change agencies in order to maintain a relationship with a former employee, they do so immediately and that customers seldom use only one collection agency and frequently and regularly re-evaluate their agencies.

The Chancellor further found that the restriction prohibiting contact with any customer which was a client of Central Adjustment Bureau during the defendants' entire terms of employment, was also unreasonable. He, therefore, limited the prohibition to those CAB customers who were customers as of January 1, 1979, and that, as thus altered, the covenant was reasonable and enforceable.

Finally, the Chancellor concluded that the nationwide scope of the restrictions here imposed was too broad but that, since the defendants were competing with CAB in the very area in which they had worked previously, the defendants had no cause to complain.

We agree with both the Chancellor and the Court of Appeals that the restrictions were unreasonably broad. As enforced by the Chancellor, however, the covenants were reasonable. The question before this Court is whether the Chancellor had the authority to modify a covenant not to compete which is otherwise unreasonably broad. Tennessee courts have not previously addressed this question. As a case of first impression, therefore, it is appropriate to look for guidance to decisions by courts having considered this question. *See generally*, Annot. 61 A.L.R.3d 397 (1975) (collecting cases).

At one time the majority of courts employed the "all or nothing at all" rule. *See Ehlers v. Iowa Warehouse Co.*, 188 N.W.2d 368 (Iowa 1971). Under this rule, a court either enforces the contract as written or rejects it altogether. A covenant containing a term greater than necessary to pro-

tect the employer's interest is void in its entirety. Courts employing this rule reason that partial enforcement delegates to courts, when the covenants prove excessive, power to make private agreements. *Rector-Phillips-Morse, Inc. v. Vroman*, 253 Ark. 750, 489 S.W.2d 1, 4-5 (1973).

The recent trend, however, has been away from the all or nothing at all rule in favor of some form of judicial modification. Several courts have explicitly overruled their own prior case law and adopted judicial modification. *See, e.g., Ehlers v. Iowa Warehouse Co., supra; Solari Industries, Inc. v. Malady*, 55 N.J. 571, 264 A.2d 53 (1970). Our research indicates some form of judicial modification has now been adopted by the majority of jurisdictions. *See, Ehlers v. Iowa Warehouse Co., supra*, at 370; Annot. 61 A.L.R.3d 397 (1975). We think that under appropriate circumstances, some form of judicial modification should be permitted, especially when, as in the case before us, the covenant specifically provides for modification.

Courts have taken one of two approaches in modifying restrictive covenants. The "blue pencil" rule provides that an unreasonable restriction against competition may be modified and enforced to the extent that a grammatically meaningful reasonable restriction remains after the words making the restriction unreasonable are stricken. *Solari Industries, Inc. v. Malady, supra*, 264 A.2d at 57. For example, in a restriction on soliciting business clients in "Toledo, Ohio, and the United States" the court would "blue pencil" or mark out "Ohio, and the United States" leaving the covenant enforceable in Toledo. *See, Briggs v. Butler*, 140 Ohio St. 499, 45 N.E.2d 757 (1942).

The blue pencil rule has the advantage of simplicity and prevents a court from actually rewriting private agreements. On the other hand, the contract still fails if the offending provision cannot be stricken. Often a divisible term contains an integral part of the agreement so that "blue penciling" the provision emasculates the contract. *Raimonde v. Van Vlerah*, 42 Ohio St.2d 21, 325 N.E.2d 544 (1975). The rule

has been criticized as emphasizing form over substance. *Bess v. Bothman,* 257 N.W.2d 791 (Minn.1977). It has been rejected as against the weight of authority and criticized by writers such as Williston and Corbin. *See,* RESTATEMENT (SECOND) OF CONTRACTS § 184 reporter's note; 6A Corbin on Contracts, §§ 1390 and 1394 (1968); 14 Williston on Contracts, § 1647B, 1647C (3d ed. 1972).

The most recent trend, therefore, has been to abandon the "blue pencil" rule in favor of a rule of reasonableness. *See, e.g., Ehlers v. Iowa Warehouse Co., supra; Bess v. Bothman, supra; Karpinski v. Ingrasci,* 28 N.Y.2d 45, 320 N.Y.S.2d 1, 268 N.E.2d 751 (1971); *Solari Industries, Inc. v. Malady, supra;* and *Raimonde v. Van Vlerah, supra.* This rule provides that unless the circumstances indicate bad faith on the part of the employer, a court will enforce covenants not to compete to the extent that they are reasonably necessary to protect the employer's interest "without imposing undue hardship on the employee when the public interest is not adversely affected." *Ehlers v. Iowa Warehouse Co., supra,* at 370.

■ We are persuaded that the rule of reasonableness is the better rule. It is consistent with and an extension of the rule of reasonableness set forth in *Allright Auto Parks v. Berry, supra.* In adopting it, we do not intend a retreat from the general rule precluding courts from creating new contracts for parties. *See, Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.,* 521 S.W.2d 578 (Tenn. 1975). We are guided instead by the special nature of covenants not to compete already discussed. Further, as noted by two leading commentators on contracts:

"This is not making a new contract for the parties; it is a choice among the possible effects of the one that they made, establishing the one that is the most desirable for the contractors and the public at large. Partial enforcement involves much less of a variation from the effects intended by the parties than total nonenforcement would. If the arguments in favor of partial enforcement are convincing, no court need hesitate to give them effect." Williston & Corbin, *On the Doctrine of Beit v. Beit,* 23 Conn.B.J. 40, 49–50 (1949).

We recognize the force of the objection that judicial modification could permit an employer to insert oppressive and unnecessary restrictions into a contract knowing that the courts can modify and enforce the covenant on reasonable terms. Especially when the contract allows the employer attorney's fees, the employer may have nothing to lose by going to court, thereby provoking needless litigation. *See, Rector-Phillips-Morse, Inc. v. Vroman, supra,* 489 S.W.2d at 5. If there is credible evidence to sustain a finding that a contract is deliberately unreasonable and oppressive, then the covenant is invalid. *Ehlers v. Iowa Warehouse Co., supra,* at 374. Even in the absence of evidence sufficient to support a finding of invalidity, a court may well find in the course of determining reasonableness that a contractual provision for attorney's fees is unreasonable either in whole or in part.

■ In the instant case, we hold that the Chancellor acted properly in enforcing the contract on reasonable terms against the defendants. We further find no credible evidence to sustain a finding of bad faith on the part of CAB or to warrant invalidation of the contractual provision on attorney's fees.

The judgment of the Court of Appeals as to all defendants is reversed and the judgment of the Chancellor is affirmed. Costs are taxed against the defendants.

COOPER, C.J., and HARBISON, J., concur.

FONES and BROCK, JJ., dissent in separate opinion.

BROCK, Justice, dissenting.

I respectfully dissent.

In *Associated Dairies, Inc. v. Ray Moss Farms, Inc.,* 205 Tenn. 268, 326 S.W.2d 458 (1959), this Court held that continued em-

ployment is no consideration for a restrictive covenant imposed after an employment relationship has begun. In *Ray Moss*, a competitor of the employer, who was in the dairy business, allegedly began to hire the employer's sales drivers and to use those drivers to solicit the employer's business. In response, the employer required its drivers, including the defendant, to sign a noncompetition agreement. In refusing to enforce the agreement, this Court found as follows:

> "In the case at bar there was no agreement that the complainant would retain the defendant for as much as one day.... In these circumstances there was no consideration to sustain the contract which purports to restrain the defendant from engaging in the solicitation of business for another." *Id.*, 205 Tenn. at 275, 326 S.W.2d at 461.

Thus, if the terms of the original employment agreement do not include a covenant not to compete, any subsequent covenant must be supported by some consideration other than mere continued employment under a contract terminable at will. *See, e.g., Di Deeland v. Colvin*, 208 Tenn. 551, 347 S.W.2d 483 (1961) (new obligation to give two weeks' notice before employment terminated held to be adequate consideration).

*Ray Moss* is supported by the following reasoning in *Pemco Corp. v. Rose*, 163 W.Va. 420, 257 S.E.2d 885, 890 (1979):

> "The argument that the employer's consideration for the non-competition covenant is the forebearance of the legal right of discharge we find unavailing but not without logical support.... Common law principles governing employment contracts should not be employed to supply consideration for a non-competition covenant where such a provision was not freely bargained for by the parties."

In the instant case, CAB did not present the covenants to the defendants until after they had terminated their previous employment and begun work for CAB. Although the covenants were presented to the defendants as soon as or shortly after they

began working, at that point the covenants were no longer the subject of free bargaining. As the Court of Appeals observed, "[e]ven if he [the employee] is notified of the restrictive covenant on the first day of his new employment, he has foreclosed his other options at that point and has little choice but to sign."

The *Ray Moss* rule that an employee's anticompetitive covenant executed after the commencement of his employment is unenforceable because without consideration is followed in a number of other states. *Kadis v. Britt*, 224 N.C. 154, 29 S.E.2d 543, 152 A.L.R. 405 (1944); *Wilmar, Incorporated v. Liles*, 13 N.C.App. 71, 185 S.E.2d 278, 51 A.L.R.3d 816 (1971), *cert. denied* 280 N.C. 305, 186 S.E.2d 178 (1972); *Forrest Paschal Machinery Co. v. Milholen*, 27 N.C.App. 678, 220 S.E.2d 190 (1975); *Schneller v. Hayes*, 176 Wash. 115, 28 P.2d 273, 275 (1934); *George W. Kistler, Inc. v. O'Brien*, 464 Pa. 475, 347 A.2d 311 (1975); *Beaver Productions, Inc. v. Johnston*, III, La.App., 335 So.2d 59 (1976); *Morgan Lumber Sales Company v. Toth*, 41 Ohio Misc. 17, 321 N.E.2d 907 (1974); *Pemco Corp. v. Rose, supra* (applying Virginia law). We are urged to hold in this case that consideration may be found to have consisted of promotions and increases in compensation granted to the defendants-employees over the years of their employment with the appellant. *Davies & Davies Agcy., Inc. v. Davies*, Minn., 298 N.W.2d 127 (1980) is cited as authority for such a holding. I decline this invitation because of the fundamental doctrine that in order for an act to constitute consideration for a promise it must have been "bargained for and given in exchange for that very promise." Section 75, Restatement of Contracts, American Law Institute. There is simply no indication in this record whatever for a conclusion that promotions and increases in compensation, given years after the covenants not to compete were executed, were bargained for and given in exchange for those covenants. The covenants not to compete in the instant case were not bargained for at all but were merely imposed upon the employees after

their employment began. I would hold that these covenants fail for lack of consideration. The majority finds consideration where there is none.

In *Allright Auto Parks, Inc. v. Berry*, 219 Tenn. 280, 409 S.W.2d 361 (1966) this Court held that "the time and territorial limits involved must be no greater than is necessary to protect the business interests of the employer." In the instant case the Chancellor found that Central Adjustment Bureau had a legitimate business interest to be protected by the noncompetition covenants and that the defendants' competition damaged that interest.

I agree with both the Chancellor and the Court of Appeals that the restrictions in these covenants were unreasonably broad. But, we are urged to uphold the reasonableness of the covenants as they have been altered by the Chancellor. It is said that this Court has not previously addressed this question and to the best of my knowledge that is true.

Some courts have taken one of two courses in "modifying" noncompetition covenants. The "blue pencil" rule allows an unreasonable restriction against competition to be modified and enforced to the extent that a grammatically meaningful, reasonable restriction remains after the words rendering the restriction unreasonable are stricken. *See Solari Industries, Inc. v. Malady*, 55 N.J. 571, 264 A.2d 53 (1970).

Other courts, including the majority in this case, have followed what has been referred to as the "rule of reasonableness" in altering unreasonable covenants not to compete and enforcing such covenants as altered. *See Ehlers v. Iowa Warehouse Company*, Iowa, 188 N.W.2d 368 (1971). Under this rule it is said that unless the circumstances indicate "bad faith" on the part of the employer, the court will enforce covenants not to compete to the extent that they are reasonably necessary to protect the employer's interest "without imposing undue hardship on the employee when the public interest is not adversely affected."

*Ehlers v. Iowa Warehouse Company, supra*, at 370.

I think it unwise to follow either of these courses. I continue to adhere to the rule that the courts of this state have no business in creating new contracts for the parties. *Bob Pearsall Motors, Inc. v. Regal Chrysler-P., Inc.*, Tenn., 521 S.W.2d 578 (1975). Our proper role is to enforce a contract as written, or, if it be invalid, to reject it altogether. As the Supreme Court of Arkansas held in *Rector-Phillips-Morse, Inc. v. Vroman*, 253 Ark. 750, 489 S.W.2d 1, 61 A.L.R.3d 391 (1973), when a covenant against competition is too far reaching to be valid, the court will not make a new contract for the parties by reducing the restriction to a shorter time or to a smaller area; the parties are not entitled to make an agreement that they will be bound by whatever contract the courts may make for them at some time in the future, since this would confer upon the courts the power to make private agreements. I also find persuasive the following observation:

"For every covenant that finds its way to court, there are thousands which exercise an *in terrorem* effect on employees who respect their contractual obligations and on competitors who fear legal complications if they employ a covenator, or who are anxious to maintain gentlemanly relations with their competitors. Thus, the mobility of untold numbers of employees is restricted by the intimidation of restrictions whose severity no court would sanction. If severance is generally applied, employers can fashion truly ominous covenants with confidence that they will be pared down and enforced when the facts of a particular case are not unreasonable. This smacks of having one's employee's cake, and eating it too." *Blake, Employee Agreements Not to Compete*, 73 Harv.Law Rev. 625, 682–83 (1960).

The policy whereby unreasonable covenants not to compete are to be modified by the courts and, as thus modified, enforced, will permit an employer to insert oppressive and unnecessary restrictions into such

covenants, knowing that the courts will modify and enforce the covenants on reasonable terms. And, when such covenants contain a provision for the employer to recover attorney's fees, as they often do, the employer will have nothing to lose by going to court, thereby provoking needless litigation. *See, Rector-Phillips-Morse, supra.*

I would hold that the Chancellor erred in his attempt to so modify the unreasonable provisions of these covenants not to compete as to render them reasonable and to enforce the altered "covenants."

I am authorized to state that Mr. Justice FONES concurs in this dissent.