895 F.2d 1414
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
TECHNOLOGY FOR ENERGY CORPORATION, Plaintiff-Appellee,
v.
INTEGRATED SYSTEMS, INC.; Clyde W. Craven, Jr.; Ronnie D.
Moore, Defendants-Appellants.
 No. 89-5405.
 United States Court of Appeals, Sixth Circuit.
 Feb. 20, 1990.
 
 Before DAVID A. NELSON and BOGGS, Circuit Judges, and FRANK J. BATTISTI, District Judge.*
 PER CURIAM.
 
 
 1
 Technology for Energy Corporation (TEC) and Integrated Systems, Inc. (ISI) are Tennessee corporations. TEC was engaged in the design and development of computer-based systems, instrumentation products and engineering services for nuclear and fossil-fuel powered electric generating plants. This case involves two of TEC's projects. In the Hope Creek project, TEC was under contract with Bechtel, the prime contractor on the project, to provide a radiation monitoring system for Public Service Electric and Gas (PSE & G). In the Cincinnati Gas and Electric (CG & E) project, TEC had contracted with CG & E to complete a fossil fuel power plant monitoring system.
 
 
 2
 In 1985, TEC began to experience financial difficulties, leading ultimately to a voluntary bankruptcy filing under Chapter 11 on March 29. TEC advised Bechtel, as part of its post-bankruptcy strategy, that it could not perform the Hope Creek work under its fixed-price contract as originally negotiated. After an interim agreement fell through, Bechtel terminated its contract with TEC. TEC shipped the system with fully documented software to Bechtel. TEC granted Bechtel "a license to use the Software Products for any purpose and to any extent which Bechtel deems necessary." Bechtel subsequently subcontracted with NUS Corporation to complete the project. On July 2, TEC informed CG & E that it would not complete its fixed-price contract on that project and instead proposed to renegotiate the contract on a time and material basis.
 
 
 3
 During the course of its financial difficulties, TEC had been laying off employees. On March 5, 1985, TEC laid off 62 full-time and 13 part-time employees. On June 19, an additional 50 layoffs were announced, including many employees who had been involved in the Hope Creek project. An interoffice memo on that date stated that the layoff selections were based on a projection of what TEC would be doing in the future. In late June, several former TEC employees and a number of current TEC employees who had decided to leave held meetings to discuss job opportunities. Among the participants at some of those meetings were appellants Clyde Craven, an officer and director of TEC, and Ronnie Moore, an officer of TEC. Moore had received notice on May 31 of his impending termination. Craven and Moore were terminated on June 30, 1985.
 
 
 4
 On July 16, 1985, Craven chartered Integrated Systems, Inc.; on July 22, the ten original defendants in this action decided to acquire stock in, and start working for, ISI; on August 1, ISI commenced business. Moore began soliciting business for ISI during the second week in July. He telephoned NUS, which requested a proposal on July 15. NUS accepted the proposal and ISI employees began working with NUS on the Hope Creek project on or about August 1. ISI also secured a contract with CG & E to provide the fossil fuel power plant monitoring system for the CG & E project. Moore contacted CG & E on or about July 15. On August 1, ISI provided CG & E with a time and material quotation. On July 16, TEC had also sent CG & E a proposal to complete the work on a time and material basis, as part of TEC's effort to renegotiate its breached contract with CG & E. CG & E accepted the ISI proposal.
 
 
 5
 By the time it was awarded the CG & E contract, ISI had secured the services of David Eli Wittner. Wittner had been a TEC systems engineer. He had helped to develop the source code for the software used by TEC in the CG & E project. On July 12, 1985, Wittner advised TEC management orally, and CG & E in writing, that he planned to leave TEC. After submitting his resignation, Wittner advised TEC of his willingness to complete the CG & E system for TEC through a subcontract to ISI. TEC declined the offer. Wittner's employment agreement with TEC included a trade secrets provision.
 
 
 6
 On October 2, 1985, TEC filed suit in the bankruptcy court against ISI and ten individuals who worked for ISI and had formerly worked for TEC, including Craven and Moore, charging (1) that the defendants had breached their employment contracts and their duty of loyalty by disclosing trade secrets; (2) that ISI, in its corporate capacity, and Craven and Moore, in their individual capacities, had induced Wittner to terminate his employment with TEC and to breach his employment contract; (3) that the defendants had interfered with TEC contracts and usurped prospective business opportunities; and (4) that Craven and Moore had breached their fiduciary duty to TEC and usurped corporate opportunities.
 
 
 7
 On October 4, 1985, TEC's motion for a temporary restraining order against ISI was denied by the bankruptcy court. The bankruptcy court handled the suit as a non-core matter under 28 U.S.C. Sec. 157(c)(2). On July 17, 1987, the bankruptcy court ruled that TEC had failed to carry its burden of proof on each of its claims and it dismissed the complaint, denying TEC injunctive relief.
 
 
 8
 TEC appealed to the district court.[1] On February 19, 1989, the district court reversed in part the bankruptcy court's ruling, holding that Craven and Moore had breached their fiduciary duties to TEC by soliciting business from TEC customers and that Wittner had breached his employment agreement with TEC by using proprietary materials in working for ISI on the CG & E project. The court remanded the case to the bankruptcy court for the limited purposes of (1) taking evidence of damages caused by Craven's and Moore's breach of fiduciary duty, (2) taking evidence of damages caused by Wittner's use of proprietary materials, and (3) determining whether ISI should be held liable for inducing Wittner to breach his employment contract with TEC. Craven, Moore, and ISI appealed to this court.
 
 I. Breach of fiduciary duty
 
 9
 The employment contracts of Craven and Moore with TEC did not contain non-compete provisions. Thus, TEC's argument that Craven and Moore violated their fiduciary duty is based entirely on the common law duty of loyalty. Under Tennessee law, directors and officers of a corporation have a duty of loyalty to the corporation. State v. Society for the Preservation of the Book of Common Prayer, 693 S.W.2d 340, 343 (Tenn.1985). That duty prevents directors and officers from pursuing for their own benefit business opportunities that rightfully belong to their employers. In the absence of a non-compete clause in the employment contract, the fiduciary duty of a director or officer generally ceases upon his termination from the company. Hayes v. Schweickart's Upholstering Co., 402 S.W.2d 472, 482 (Tenn.App.1965) (fiduciaries' "obligation of loyalty extend[s] up until the very last day of their employment."); Central Adjustment Bureau, Inc. v. Ingram, 6 TAM 52-4 (M.S.Tenn.App.1981) rev'd. on other grounds, 678 S.W.2d 28 (Tenn.1984) (merely organizing a corporation to compete with former employer while still employed is not a breach of loyalty).
 
 
 10
 We hold that Craven and Moore did not breach their duty of loyalty to TEC by their solicitation of business on the Hope Creek and CG & E projects in July 1985. Craven and Moore had completely terminated their relationships with TEC upon their discharge on June 30, 1985, two weeks before Moore began soliciting business from NUS and CG & E for ISI.
 
 
 11
 Appellee claims that under Tennessee law, a fiduciary's duty of loyalty to a corporation does not cease upon termination from the corporation, but may extend beyond the time of termination. Appellee cites the unreported case of Stangenberg v. Allied Distribution and Building Service Co., No. 86-12-II, 11 TAM 35-13 (unreported, Tenn.App., M.S.1986). The court in Stangenberg found that an officer of a corporation had breached his fiduciary duty by actions taken after his resignation from the corporation. The present case does not present a Stangenberg situation. In Stangenberg, the president of a corporation resigned and immediately underbid his former employer on a major project the corporation had been planning to undertake. Although he did not actually enter a bid until after his resignation from Allied, Stangenberg had formed a separate corporation, secured a line of credit, and fulfilled the preliminary requirements for submitting a bid while still employed at Allied. Craven and Moore took no such actions with regard to TEC. Unlike the situation in Stangenberg, Craven and Moore did not leave TEC voluntarily; they were laid off. Under the circumstances, we hold that Craven and Moore did not breach their fiduciary duty to TEC by soliciting business on the Hope Creek and CG & E projects in mid-July 1985.
 
 II. Wittner's contract with TEC
 
 12
 Eli Wittner's employment agreement with TEC included the following provision:
 
 
 13
 I will not, during my employment by TEC or thereafter without TEC's written approval, disclose to others nor use for my own benefit or the future benefit of any other individual or firm, data and information which is not generally known, which relates to my work or which relates to the actual or anticipated business, products, services or projects of TEC or similar data and information of other individuals or organizations to which I may gain access in the course of my employment or by reason of such employment.
 
 
 14
 (Emphasis added.)
 
 
 15
 The trade secrets at issue in this case are the software source codes and documentation sold to CG & E. The bankruptcy court decided, and the district court agreed, that Eli Wittner did not breach his employment agreement's prohibition on the disclosure of trade secrets because, under the licensing agreements, Bechtel and CG & E had the right to use the software they had purchased. The bankruptcy court found that TEC sold the CG & E software "with no license restriction" and that "TEC orally advised CG & E of a license to use and modify the system with its in-house personnel or by use of independent contractors." We are in agreement with those positions and hold that there was no breach of confidentiality in Wittner's use of the CG & E project software while working for ISI.
 
 
 16
 TEC, however, points out that Wittner's employment agreement prohibited not only the disclosure, but also the use of trade secrets. TEC argues that its general license to CG & E allowing third-party contractors to perform work on the TEC software did not relieve Wittner of his contractual obligation not to use the source code for the benefit of some entity other than TEC. TEC claims that the employment agreement expanded TEC's protection beyond the protection against disclosure offered by the common law; under the agreement, the employee may not use the confidential information for the benefit of another, no matter how it was obtained.
 
 
 17
 We disagree. We hold that TEC's licensing agreement with its customers concerning the use of its software undercuts its argument that the employment agreement prohibited Wittner from working on the CG & E system for ISI. We do not read the employment agreement's prohibition against the use of proprietary materials to prevent a former employee from working with software that the customer has been licensed to allow anyone to use. TEC's employment agreement with Wittner does not contain a non-compete provision, and we do not construe the prohibition against use of proprietary materials to act as a covenant not to compete. The prohibition is limited to information "not generally known." It does not apply to the software for the CG & E project, which was explicitly "generally known" to, and authorized to be used by, CG & E.
 
 III. ISI's inducement of Wittner's breach
 
 18
 Because we hold that Wittner did not breach his employment agreement in working on the CG & E computer system for ISI, we need not reach the issue of whether ISI induced such a breach. Thus, we also reverse that part of the district court's opinion ordering a factfinding on the issue of ISI's inducement of a breach of Wittner's employment agreement.
 
 
 19
 For the foregoing reasons, we REVERSE the decision of the district court remanding the case for a determination of (1) damages resulting from the breach of fiduciary duty committed by Craven and Moore, (2) damages resulting from Wittner's violation of his employment agreement, and (3) liability of ISI for inducing Wittner to breach his employment agreement, and we reinstate the decision of the bankruptcy court.
 
 
 
 *
 The Honorable Frank J. Battisti, United States District Judge for the Northern District of Ohio, sitting by designation
 
 
 [1]
 At the district court, TEC dropped its claims against all defendants except Craven, Moore, and ISI